UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH BRICE, : | |
| CHRISTINE BRICE, : | |
| Plaintiffs, : | |
| : | No. 5:15-cv-4020 |
| v. : | |
| : | |
| JOHN HOFFERT, THOMAS L. KLONIS, : | |
| HOFFERT & KLONIS, P.C., : | |
| KIM BAUER, : | |
| Defendants. : | |

## MEMORANDUM
**Kim Bauer's Motion to Disqualify Clifford B. Cohn, Esquire, ECF No. 31 - Granted**

**Joseph F. Leeson, Jr.**                                                                                         **July 25, 2016**
**United States District Judge**

### I.   INTRODUCTION

On July 21, 2015, Plaintiffs Kenneth and Christine Brice initiated this action against their former attorneys and their daughter Kim Bauer. Plaintiffs allege that Defendants stole three businesses and real estate from them by, inter alia, filing stock certificates transferring shares of the businesses into Kim Bauer's name and a deed for the properties transferring full ownership of the properties to Kim Bauer, where the signatures on these documents were either forged or fraudulently obtained.

On February 4, 2016, Defendant Kim Bauer ("Bauer") filed, under seal, a Motion to Disqualify Clifford B. Cohn, Esquire, and Cohn & Associates from representing Plaintiffs. Def.'s Mot. Disqualify, ECF No. 31. Bauer asserts that Attorney Cohn previously represented her in a legal dispute involving subject matter that is the same or substantially similar to the instant action filed against her. Attorney Cohn responds that he was never retained by Bauer;

1

rather, she acted on behalf of her parents pursuant to the fee agreement entered into between Attorney Cohn and Plaintiffs.  Pls.' Resp. Opp. Mot. Disqualify, ECF No. 42.

An evidentiary hearing was conducted on June 7, 2016.  The testimony at that hearing was placed under seal pending briefing from the parties as to whether the seal should remain in place.  Although Bauer is correct that the confidential nature of information protected by the attorney-client privilege might overcome the presumption of openness of court proceedings, *see Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984), no specific privileged communications were discussed at the hearing.  The seal is therefore lifted.

For the reasons set forth below, the Motion to Disqualify is granted.

## II.     FACTUAL FINDINGS

Following an evidentiary hearing, and after considering the evidence presented, the Court makes the following findings of fact:

On August 18, 2014, Kim Bauer took her parents to Attorney Cohn's law office in Philadelphia.  The purpose of the meeting was for her parents to obtain representation regarding a dispute with Aldi pertaining to an easement on their property.  At that time, Bauer was the CEO of KC Auto Body and KC Towing, and the manager of Brice Villa.  Pursuant to a fee agreement with Attorney Cohn signed by her parents on August 21, 2014, "Mr. and Mrs. Brice" retained Attorney Cohn to review the easement and handle related issues, and also to determine whether a malpractice suit should be filed against their former attorney John Hoffert, Esquire. *See* Pls.' Ex. P-4.  The signed agreement provided: "You [Mr. and Mrs. Brice] have also advised me that your daughter, Kim Brice Bauer has your full confidence and has been appointed by you under a power of attorney to act on your behalf in this matter." *Id.*  The email correspondence between Bauer and Attorney Cohn also indicated that Attorney Cohn's representation was of Mr. and Mrs. Brice only. *See* Pls.' Exs. P-2, P-3.  On August 18, 2014, Attorney Cohn informed

2

Bauer, "It was a pleasure meeting with you and your parents today.  I am optimistic that we can get some relief for them. . . ," and enclosed the fee agreement asking Bauer to "have them sign . . . it." *Id.* at P-3.  In a letter to "Mr. and Mrs. Brice" dated December 12, 2014, Attorney Cohn informed them of his recommendation on how to handle the Aldi easement issue, and the possible legal malpractice case against Attorney Hoffert.  Def.'s Ex. 2.  Accordingly, between August 2014, and December 2014, Attorney Cohn had an attorney-client relationship with Mr. and Mrs. Brice.

      Bauer believed that during this time, Attorney Cohn represented her and her parents as a group.  Attorney Cohn, however, referred to Bauer's role solely as a "mouthpiece" for her parents.  Attorney Cohn testified that it was because of his concern that Bauer was not a client that he included the provision in the fee agreement between him and Mr. and Mrs. Brice that Bauer had their full confidence and ability to act on their behalf.

      On January 5, 2015, Bauer contacted Attorney Cohn stating that her parents had received a letter regarding liability insurance on the encroachment area, but that "the park is now in [Bauer's] name so they are not responsible for that insurance," and asking what could be done.  Def.'s Ex. 3.  Bauer believed this issue was different from the Aldi dispute, and that Attorney Cohn represented her personally, separate and apart from his representation of her parents.  On January 7, 2015, Bauer sent Attorney Cohn an email stating that her insurance company informed her that the insurance would cost her $2,000 per year.  Defs.' Ex. 6.  Attorney Cohn responded the same day indicating that he thought the amount was high.  *Id.*  Then, in an email sent to Bauer on February 9, 2015, Attorney Cohn laid out an action plan that included his decision to notify Aldi that they "identified the wrong party for insurance," to inform Aldi that Bauer is the correct party regarding insurance, and then, because Aldi had not responded

appropriately to her parents, to wait for a response "rather than volunteering that I represent you right away." Def.'s Ex. 7.

Attorney Cohn testified that because the insurance related to the easement, he did not believe it to be a separate issue from the 2014 representation of Mr. and Mrs. Brice. He explained that he did not view the discussion as creating an attorney-client relationship with Bauer, which is why he did not send her a fee agreement. Rather, he believed that Bauer contacted him on behalf of her parents to get them out of the insurance dispute. However, in a letter addressed to Bauer's counsel in the instant action, dated January 14, 2016, Attorney Cohn "insist[ed Bauer] waive any privilege that she has to any material in my file." Def.'s Ex. 16.[1]

Bauer testified that Attorney Cohn never terminated his representation. Nevertheless, she assumed that when he filed the instant action against her that their relationship had terminated. On October 22, 2015, Ronald Williams, Esquire entered his appearance on behalf of Bauer.

### III.    STANDARD OF REVIEW

The party seeking an attorney's disqualification bears the burden of clearly demonstrating that "continuing representation would be impermissible." *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999) (quoting *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994)). Generally, motions to disqualify opposing counsel are disfavored, *see id.*, but doubts as to whether an attorney's disqualification is warranted should be resolved in favor of disqualification, *see International Business Machines Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978). A former client seeking to disqualify an attorney from representing an adverse party on the basis of the client's past relationship with the attorney has the burden of proof. *Billy v. Peiper*, No. 1:11-CV-01577, 2013 U.S. Dist. LEXIS 114891, at *27 (M.D. Pa. July 18, 2013).

---

[1]    In this letter, Attorney Cohn also states that he is "a witness."

4

## IV. ANALYSIS

### A. Attorney Cohn and Kim Bauer entered into an attorney-client relationship beginning, at the latest, January 5, 2015.

Absent a fee or explicit retainer, an attorney-client relationship may be inferred from the parties' conduct. The Eastern District of Pennsylvania has recently followed the standard set forth in *Atkinson v. Haug*, 622 A.2d 983 (Pa. Super. Ct. 1993). *See e.g., Yarnall v. Philadelphia Sch. Dist.*, 57 F. Supp. 3d 410, 430 (E.D. Pa. 2014). Under *Atkinson*, "[a]n implied attorney/client relationship will be found if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him." *Atkinson*, 622 A.2d at 986.

The first two elements are clearly satisfied. In August 2014, and again in January 2015, Bauer sought advice or assistance from Attorney Cohn regarding insurance for the property where the encroachment lies and the advice sought was within his professional competence.

In light of the fee agreement between Attorney Cohn and Mr. and Mrs. Brice only, which defined Bauer's role as acting on her parents' behalf, coupled with subsequent emails addressed only to Mr. and Mrs. Brice and email communications between Attorney Cohn and Bauer in which they discuss her parents' interests, Attorney Cohn's express and implied agreement throughout 2014, was to represent Mr. and Mrs. Brice only. Thus, it was not reasonable for Bauer to assume that she had an attorney-client relationship with Attorney Cohn in 2014.

Moreover, if this Court were to conclude, as Bauer urges, that Attorney Cohn represented hre and her parents jointly in 2014, because Mr. and Mrs. Brice have now sued Bauer, all communications during this time are discoverable. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 366 (3d Cir. 2007) (holding that when former co-clients sue one another, the default

5

rule is that all communications made in the course of the joint representation are discoverable). Because an attorney has an ethical obligation to end the joint representation when he "sees the co-clients' interest diverging to an unacceptable degree," the privilege is not defeated solely because the attorney failed to terminate the relationship. *Id.* at 368-69. However, there is no evidence that the interests of Bauer and her parents were divergent in 2014.

Nevertheless, following her discussions with Attorney Cohn on January 5, 2015, Bauer reasonably believed that he was representing her personally. Although Mr. and Mrs. Brice were mistakenly informed of the need to secure insurance, the responsibility to obtain insurance coverage fell to Bauer alone as the owner of the encroachment area. On January 7, 2015, Bauer sent Attorney Cohn an email stating that her insurance company informed her that insurance would cost her $2,000 per year. Defs.' Ex. 6. Attorney Cohn responded the same day indicating that he thought the amount was high. *Id.* This advice had no correlation to his representation of Mr. and Mrs. Brice. Then, in an email sent to Bauer on February 9, 2015, Attorney Cohn laid out an action plan that included his decision to notify Aldi that they "identified the wrong party for insurance," to inform Aldi that Bauer is the correct party regarding insurance, and, because Aldi had not responded appropriately to Mr. and Mrs. Brice, to wait for a response "rather than volunteering that I represent you right away." Def.'s Ex. 7. Despite the absence of a written fee agreement with Bauer, Attorney Cohn implicitly agreed to assist her in handling any insurance issues with Aldi and obtaining insurance for the encroachment. Bauer and Attorney Cohn therefore had an attorney-client relationship beginning in 2015.

**B.    Attorney Cohn's prior[2] representation of Kim Bauer disqualifies him from acting as counsel to Plaintiffs.**

---

[2]    Although Attorney Cohn never officially terminated his representation, Bauer reasonably understood that their relationship ended when he filed the above-captioned action against her on July 21, 2015. Moreover, Ronald Williams, Esquire entered his appearance on behalf of Bauer

6

Under Local Rule 83.6, "[t]he Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania." *See* E.D. Pa. L.R. 83.6(IV)(B). Rule 1.9(a) of the Pennsylvania Rules of Professional Conduct, Duties to Former Clients, provides: "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." "Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Pa. Rules of Prof'l Conduct 1.9 cmt. 3. In determining whether there was a "substantial relationship," courts should consider: "(1) the nature of the present lawsuit against the former client; (2) the nature and scope of the prior representation at issue; and (3) whether in the course of the prior representation, the client might have disclosed to its attorney confidences which could be relevant or possibly detrimental to the former client in the present action." *Henry v. Del. River Joint Toll Bridge Comm'n*, No. 00-6415, 2001 U.S. Dist. LEXIS 13462, at *6-7 (E.D. Pa. Aug. 24, 2001). Further, "[t]here is no situation more 'materially adverse' than when a lawyer's former client is in a suit against that lawyer's current client." *Jordan v. Phila. Hous. Auth.*, 337 F. Supp. 2d 666, 672 (E.D. Pa. 2004).

In the instant action, the ownership of the real estate where Brice Villa, KC Auto Body, and KC Towing sit, as well as the ownership of the businesses, is at issue. The transfer of real estate, namely where the encroachment lies, gave rise to the insurance issue that caused Bauer to

---

in this case more than three months before the instant motion was filed. Rule 1.7 of the Pennsylvania Rules of Professional Conduct, which governs conflicts of interests with current clients, is therefore inapplicable.

7

seek Attorney Cohn's advice in 2015.  His "action plan" in handling the insurance issue for which he represented Bauer was to notify Aldi that they "identified the wrong party for insurance," *see* Def.'s Ex. 7.  The nature of this lawsuit and the prior representations are therefore substantially related.  It is therefore also likely that in the course of the prior representation, Bauer may have disclosed confidences about the transfer and/or her ownership of certain property that could be relevant or possibly detrimental to her in the instant action.  *See Graco Children's Prods. v. Regalo Int'l LLC*, 1999 U.S. Dist. LEXIS 11392, at *10 n.6 (E.D. Pa. July 29, 1999) (determining that where a party "is able to meet the burden of showing that an attorney-client relationship exists, and that the prior representation was 'substantially related' to the current litigation, the court will make an irrebuttable presumption that relevant confidential information was disclosed during the former period of representation").  This conclusion is further supported by Attorney Cohn's insistence that Bauer "waive any privilege that she has to any material in [his] file." *See* Def.'s Ex. 16.  Accordingly, in the absence of consent from Bauer, Attorney Cohn is disqualified from representing Plaintiffs in this action.

Alternatively, Bauer cites Rule 3.7 as requiring Mr. Cohn's disqualification from representing Plaintiffs at trial.  Rule 3.7 of the Pennsylvania Rules of Professional Conduct provides that a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness. . . ."  Pa. Rules of Prof'l Conduct 3.7(a); *see also Adeniyi-Jones v. State Farm Mut. Auto. Ins. Co.*, No. 14-7101, 2016 U.S. Dist. LEXIS 85053, at *5 (E.D. Pa. June 30, 2016).  "'Ordinarily, [ ] appearance of an attorney as both advocate and witness at trial is considered highly indecent and unprofessional conduct to be avoided by counsel and to be strongly discountenanced by colleagues and the courts.'"  *Id.* at *5-6 (quoting *Commonwealth v. Willis*, 552 A.2d 682, 696 (Pa. Super. Ct. 1988)).  However, "[t]his Rule does not preclude an attorney from representing a client when the attorney will likely be a necessary witness, but only prevents

8

an attorney from acting as an 'advocate at trial' in such a case." *Lebovic v. Nigro*, No. 96-319, 1997 U.S. Dist. LEXIS 1897, at *2 (E.D. Pa. Feb. 25, 1997).

Attorney Cohn concedes that he will be a witness at trial and argues only that he should not be disqualified prior to trial. *See* Def.'s Ex. 16; Pls.' Mem. Opp. Mot. Disqualify 13-14, ECF No. 42. However, because this Court finds that Rule 1.9 requires his immediate disqualification, it need not determine whether Attorney Cohn is a "necessary" witness under Rule 3.7.

## V. CONCLUSION

As of January 5, 2015, Attorney Cohn and Bauer had formed an attorney-client relationship, which involves matter substantially similar to the instant action, and during which Bauer might have disclosed confidences which could be relevant in the present action. Accordingly, Attorney Cohn is disqualified from representing Plaintiffs in this action.

Further, in order for the Court to ascertain whether any privileged information was communicated by Attorney Cohn to co-counsel Alan L. Frank, Esquire, Attorney Cohn is directed to turn over to the Court, for an in camera review, all documents shared between him and Attorney Frank, which contain any reference to any information provided by Kim Bauer to Attorney Cohn on or after January 5, 2015.[3]

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[3] Bauer has filed a Motion to Disqualify Alan L. Frank, Esquire, ECF No. 50, based on the likelihood that Attorney Cohn shared privileged information with Attorney Frank. *See Delaware River Port Auth. v. Home Ins. Co.*, No. 92-3384, 1994 U.S. Dist. LEXIS 11427, at *22 (E.D. Pa. Aug. 17, 1994) (conducting an in camera review of the files of co-counsel to determine whether they contained any privileged or confidential material that originated from disqualified counsel).