| | |
|---|---|
| KENNETH BRICE AND CHRISTINE BRICE, H/W : | **CIVIL ACTION** |
| | **NO. 15-4020** |
| V. : | |
| KIM B. BAUER, : | |
| JOHN HOFFERT, ESQUIRE, INDIVIDUALLY | |
| THOMAS L. KLONIS, ESQUIRE, INDIVIDUALLY, : | |
| AND HOFFERT & KLONIS, P.C. | |

**CLIFFORD B. COHN'S MEMORANUDUM IN RESPONSE TO DEFENDANT BAUER'S MOTION FOR FCRP RULE 11 SANCTIONS**

**I.   Introductory Statement**

Absent from the defendants' motion for sanctions are material and undisputed facts: the Plaintiffs' response to the motion for sanctions filed by Counsel Frank details those missing facts and documents. This response will not repeat the Plaintiffs' argument and citations here.

Clifford Cohn will move to adopt the Plaintiffs' response as if stated herein. The inclusion of those material and undisputed facts, details regarding the documents, opinions, and proposed stipulations to cure, lead to one conclusion: denial of the defendants' motion for sanctions.

In regard to Counsel Cohn, this response will elucidate details of the discussions between the defendant and counsel before this lawsuit was ever filed; details of the pre-suit meeting between Cohn and the defendant attorneys, and documents exchanged between the defendants, their counsel and counsel during the pre-filing period; pre-suit opinions elicited by non-party professionals lawyers and accountants.

The inclusion of those material and undisputed facts, the details regarding the documents, opinions, and proposed stipulations to cure the pleading deficiencies raised during the rule 11 "safe harbor", lead to one conclusion: denial of the defendants' motion for sanctions. Counsel should not be sanctioned due to defendants failure to provide documents as part of a litigation strategy.  The defendant's motion for sanctions should be denied for several reasons:

A. Substitute counsel, Alan Frank, has fully represented the Plaintiffs since February 6, 2016. Frank became the "captain of the ship" on behalf of the Plaintiffs since that time. Cohn remains aligned with the Plaintiffs despite Bauer's numerous attempts to destroy the attorney client relationship between Cohn and the Plaintiffs, including this motion for sanctions.

B. Counsel Cohn stepped back to a supporting role after Bauer filed her motion for disqualification on February 2, 2016. Cohn's only filings after February 4, 2016 involve Bauer's motion to disqualify him. The pleadings filed on behalf of the Plaintiffs, the 19 depositions taken in this lawsuit, as well as the key decisions since February 4, 2016 were led and made by Alan Frank, and not Cohn. Since Frank entered his appearance, Cohn completely deferred to Alan Frank, Esquire. As a result, Cohn could not "withdraw or appropriately correct" any pleadings as subsequent counsel, was in charge; and

C. Bauer's motion for sanctions as to Cohn is one in hindsight: Bauer ignores that prior to filing the Complaint and Amended Complaint Cohn conducted a reasonable investigation that complied with Rule 11.

## II. Summary of Facts

On July 25, 2016, the court issued its order regarding the motion for disqualification. Contained within that opinion are the court's findings of fact. The finding of facts set out by court will not be discussed here. Additionally, this response will supplement and provide additional facts relevant to this motion for sanctions without jeopardizing the attorney client privilege.

### A. <u>Bauer Brought Her Parents to Cohn Two Years Ago</u>

It is undisputed that Kenneth Brice ("Kenneth") & Christine Brice ("Christine") retained Clifford Cohn ("Cohn") two years ago. Kenneth & Christine's youngest adult daughter, Kim Bauer ("Bauer"), brought her retired parents to Cohn to discuss a potential lawsuit against the defendant attorney John Hoffert ("Hoffert") and Aldi involving the trailer park that the parents owned. See Exhibit 1.

It is also undisputed that Cohn initially advised Kenneth & Christine through Bauer, and had several meetings where Bauer was present with her parents. Cohn never had a separate in person meeting with Bauer, where Bauer was present, and her parents were not. Bauer was at all times acting as the spokesperson for her parents, Kenneth & Christine. See Exhibit 1.

On April 1, 2015, after learning that their daughter was attempting to defraud them, , Christine directed Cohn not to speak with Bauer again. (Bauer Memorandum, p11. Exb N)

On April 8, 2015, the Brices' fears were realized when the deed was filed in Berks County that transferred millions of dollars' worth of property from the Brices to their daughter. The deed had been signed 2 1/2 years before, on October 1, 2012. See Ex. 7.

### B. Cohn's Pre-Suit Inquiry

Cohn communicated with additional professionals for Kenneth & Christine, John Roland, Esquire, who represented Kenneth & Christine, and their current accountant, Michael DePaul, Jr. See Exhibit 1.

Michael DePaul relayed that he was the accountant for Kenneth & Christine until Bauer terminated him on October 4, 2012. DePaul had created documents that showed that the goal for the estate plan for Kenneth & Christine "was to provide sufficient cash flow to them during their retirement years while insuring that there is not a significant tax liability." [Cohn Affidavit, ¶] See Exhibit 11.

While Cohn pieced together the information from the professionals, Cohn's investigation remained on-going. Without divulging specific attorney-client communications regarding their discussions, on April 29, 2015, Cohn met with the Brices in Norristown, PA to discuss strategy. See Exhibit 1.

On May 6, 2015, two months before the complaint was filed in the Eastern District of Pennsylvania, a writ of summons was filed in Berks County, as well as a Lis Pendens on the real property at issue. (Bauer Memorandum, p.11). Contrary to Bauer's belief that she did not learn that Cohn represented her parents against Bauer until July, on May 6,2015 Cohn communicated with her counsel Klonis, and confirmed that by sending a letter addressed to the firm's general email account that provided notice to Hoffert and Klonis that Cohn had filed a lawsuit against Bauer. [Cohn Letter to Klonis, May 6, 2015.   See Ex. 1.  The letter also asked Hoffert and Klonis to accept service, as well as to produce books and records of the businesses germane to the dispute. On May 12, 2015, counsel Cohn asked for all files and documents which were in the possession of the attorneys Hoffert and Klonis. It is now known that they had the original deeds at that time. Nothing was provided. See Exhibit 2.

### C. Cohn's Request for a Pre-Suit Meeting with Defendants

Cohn next asked for a meeting with the defendant attorneys. Cohn wanted to hear their side and asked them to come forward with information regarding the allegations in the complaint, whether there was information that exonerated the allegations vis-à-vis the defendant attorneys or Bauer. See Exhibit 1.

On May 28, 2015, Cohn met with the defendant attorney, ("Attorney Klonis") to request that Attorney Klonis advise Bauer to voluntarily return the Companies and Property to Brice. (Bauer Memorandum, p11).

Contrary to defendant's allegations that the meeting occurred at the offices of Hoffert & Klonis, the meeting between Klonis and Cohn occurred at Michael DePaul's offices, at the offices of Riensel Kuntz Lesher LLP in Wyomissing. During the conversations, repeated requests were made for any evidence that would be supportive of Ms. Bauer's claims that her parents had transferred virtually all of their wealth to her.

On June 22, 2015, Cohn sent a letter to both Hoffert and Klonis attempting to continue the search for appropriate information. See Ex. 4. Cohn still had not received documents, proposals or any movement toward resolution or avoiding the lawsuit.

On July 21, 2015, Cohn filed the original complaint in the EDPA. (Docket Entry #1)

### D. The Motion to Disqualify Removes Cohn and Substitutes Alan Frank as "Captain of the Ship."

While Bauer answered the Amended Complaint on November 5, 2015, the defendant attorneys filed motions to dismiss it. (Docket Entry #13). On January 7, 2016, the court conducted a Pretrial Conference (Docket Entry #18), and on February 1, 2016, the court conducted a settlement conference. (Docket Entry #25). There were no significant pleadings filed by Cohn after that time other than in relation to the Motion to Disqualify.

On February 4, 2016, **nine months after being notified of the lawsuit in Berks County on May 6, 2015**, six months after the Amended Complaint was filed, and three months after Bauer's answer to the Amended Complaint was filed, Bauer filed a motion to disqualify Cohn. (Bauer Memorandum, p.11).

Immediately upon receipt of the motion for disqualification, in an effort to protect his clients and their lawsuit, Cohn stepped back. Cohn referred Kenneth & Christine to substitute counsel, Alan Frank, Esquire. See Exhibit 1.

Frank entered his appearance two days later on February 6, 2016, and became "the captain of the ship." (Bauer Memorandum, p.11-12).

On February 8, 2016, Frank requested an extension of discovery deadlines so that he could "become acclimated with the case." (Bauer Memorandum, p.12. Exb P.). The court denied that request. Over the course of the next several months, counsel for both parties took 19 depositions and exchanged a volume of documents. See Exhibit 1. Of the 19 depositions, Cohn's participation was limited to observing a very few. See Exhibit 1.

On February 12, 2016, Bauer's counsel sent a subpoena to Cohn for Cohn's deposition on March 17, 2016. See Exhibit 1.

On March 1, 2016, Bauer filed a second motion to disqualify counsel. (Docket #50).

On March 3, 2016, Frank took the deposition of Timothy Kershner, the accountant. Cohn was not present. (Bauer Exb. D).

On March 16, 2016, Bauer took the deposition of Michael DePaul. Cohn was not present. (Bauer Exb. I).

On March 17, 2016, Frank took the deposition of the defendant Bauer. Cohn was not present. (Bauer Exb. C).

On April 5, 2016, Frank took the deposition of Ms. Arlene Bare, the notary. Cohn was not present. (Bauer Exb. A).

On April 6, 2016, Frank took the deposition of defendant attorney Thomas Klonis. Cohn was not present. (Bauer Exb. O).

On April 20, 2016 the court's deadline to file all expert reports, counsel, Frank, produced four expert reports. Cohn had no input into these expert reports.

After the court denied the defendant attorneys' motion to dismiss on April 13, 2016, the defendants filed their Answer and Counter-Claim that contained an interpleader on April 27, 2016.

The interpleader alleged that Hoffert remained in his possession of the deed, and other critical matters that were never previously shared with Cohn, and were not provided to Cohn in the pre-filing period.

On May 3, 2016, the IRS produced copies of the Original and Amended Gift Tax Returns. (Bauer Exb. F).

On May 31, 2016, the court granted Frank's request and ordered that any rebuttal report be filed by June 17, 2016. (Bauer Memorandum, p.8).

On June 3, 2016, Kurtz inspected the original deed and stock certificates. (Bauer Memorandum, p.9).

On June 7, 2016, the court conducted an "evidentiary hearing" in Allentown. (Docket Entry #97).

On June 13, 2016, Frank filed the Plaintiffs' Conference Summary Memorandum. (Bauer Memorandum, p.12. Exb Q).

On June 15, 2016, Frank sent Bauer the rebuttal polygraph expert report of Mike White. (Bauer Exb L).

On June 21, 2016, Bauer filed her forensic handwriting expert report of Dennis Ryan. (Bauer Exb. J).

### E. <u>Bauer's Motion for Sanctions</u>

On June 22, 2016, Bauer sent Cohn the motion for sanctions by Federal Express. Cohn did not receive it until the next day. Cohn deferred to Frank to respond on behalf of Kenneth & Christine. See Exhibit 1. The allegations against Cohn involved the alleged failure to do pre complaint investigation.

### F. <u>Plaintiffs Attempt to Cure with Third Amended Complaint on July 1, 2016.</u>

Attorney Frank wrote to the defendant on July 1, 2016 regarding Bauer's motion for sanctions. Frank wrote:

> We write to obtain your consent to "appropriately correct" certain factual allegations in Plaintiffs' Amended Complaint challenged by Defendant Bauer and the Attorney Defendants, pursuant to Fed. R. Civ. P. 11(c)(2) and to provide support for those challenged allegations that Plaintiffs will not be correcting.

Frank, and not Cohn, laid out several corrections specifically in a potential Third Amended Complaint. Frank also attached the draft Third Amended Complaint. Both Bauer and the defendant attorneys rejected the proposed amendments found in the draft Third Amended Complaint. The correspondence was between Frank and Bauer and the defendant attorneys. Cohn had virtually no voice in the proposed amendments to the Third Amended Complaint. See Exhibit 1.

Bauer next sought an Emergency Motion for a Temporary Restraining Order to restrain and enjoin her parents from entering upon the property they own. (Docket Entry #107);

6

On July 8, 2016, the court denied Bauer's Emergency Motion for a Temporary Restraining Order. (Docket Entry #111).

The parties all filed motions for summary judgment on July 8, 2016 and July 9, 2016. (Docket Entry #112, 114 and 116.)

On July 15, 2016, the Brice's filed a motion for leave to file a Third Amended Complaint. (Docket Entry #127.) In the motion for leave to file a Third Amended Complaint, Frank sought to:

"…(a) dismiss causes of action alleging Civil Conspiracy (Count XVI of Plaintiffs' Amended Complaint) and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1962(b), (c) & (d) (Counts I, II & III of Plaintiffs' Amended Complaint) against the "Attorney Defendants", as well as averments related thereto; and (b) "appropriately correct" certain factual allegations in Plaintiffs' Amended Complaint challenged by Defendant Bauer and the Attorney Defendants pursuant to Fed. R. Civ. P. 11(c)(2) . [Docket Entry #127].

On the same day, July 15, 2016, Bauer filed this Motion for Rule 11 Sanctions. (Docket Entry # 126).

While Bauer rejected any attempt by Frank to resolve the motion for sanctions, Frank and counsel for the defendant attorneys entered into a stipulation that resolved the motion for sanctions brought by the defendant attorneys, to wit: Plaintiffs withdrew Counts I, II, III, VIII, XVI and other allegations contained within the Amended Complaint.

Frank continued to work out a stipulation with Bauer. On July 19, 2016, Frank proposed to Bauer the following:

1. We will Dismiss COUNT III - RACKETEER INFLUENCED AND CORRUPT ORGANIZATION 18 U.S.C. Sec. 1962(d) (paragraphs 103-106) against Defendant Bauer.
2. We will Dismiss COUNT XVI - CIVIL CONSPIRACY (paragraphs 164-167) against Defendant Bauer.
Please prepare the Stipulation. Thank you.
Frank's July 19, 2016 Correspondence is attached to as Exhibit 6.

**III.    Bauer's Motion for Sanctions Should Be Denied.**

  **A. Cohn Remains Aligned With the Plaintiffs and Adopts The Plaintiffs' Response to Bauer's Motion for Sanctions.**

Substitute counsel, Alan Frank, has fully represented the Plaintiffs since February 6, 2016. Frank became the "captain of the ship" on behalf of the Plaintiffs since that time. Cohn remains aligned with the Plaintiffs despite Bauer's numerous attempts to destroy the attorney

7

client relationship between Cohn and the Plaintiffs, including the motion for sanctions. Consequently, Cohn adopts the arguments raised in the plaintiffs' response to Bauer's motion for sanctions.

### B. Cohn deferred all decisions to Alan Frank.

Clifford Cohn stepped back to a supporting role after Bauer's motion for disqualification on February 2, 2016.

When Cohn received the motion for sanctions shortly after June 22, 2016, Cohn was duty-bound, both professionally and ethically, that Frank should independently determine how to respond to Bauer's motion for sanctions, as well as the motion for sanctions by the defendant attorneys.

As a result, Cohn *was and is* without authority pursuant to Rule 11(c)(1)(A) to "withdraw or appropriately correct" "…the challenged paper, claim, defense, contention, allegation, or denial." Only Frank, on behalf of the Plaintiffs, could do so. And, as discussed throughout, Frank attempted to do so in the proposed Third Amended Complaint, as well in the proposed stipulation.

Had Cohn articulated a position that differed with a position or approach asserted by Frank, or the Plaintiffs, Cohn could have created conflict of interest between Cohn and the Plaintiffs, or worse, caused harm to the Plaintiffs' lawsuit against Bauer.

To hold Cohn responsible for failing to "withdraw or appropriately correct" the Amended Complaint, would be unreasonable and against the intent, spirit and manifest weight of Rule 11's "safe-harbor" provisions.

### C. Cohn Conducted a Reasonable Investigation Prior to Filing the Complaint and Amended Complaint and Complied with Rule 11.

Bauer's motion for sanctions regarding the allegations contained in the Amended Complaint is one in hindsight: Bauer ignores that Cohn, prior to filing the Complaint and Amended Complaint, conducted a reasonable investigation that complied and met with Rule 11.

Today, in the Third Circuit, attorneys may be sanctioned if they, among other things, fail to make a objectively reasonable inquiry into the legitimacy of a pleading. Fed.R.Civ.P. 11(b)(2) & (c). A district court must determine whether the attorney's conduct was "objectively reasonable under the circumstances." *Simmerman v. Corino,* 27 F.3d 58, at 62 (3d. Cir. 1994).

Moreover, Rule 11(b) requires a reasonable inquiry of the facts at the time, and not hindsight. "Avoiding the wisdom of hindsight, courts must judge the signer's conduct by what was reasonable to believe at the time the pleading, motion or other paper was submitted." *Barry-Wehmiller Design Group, Inc. v. Storcon Systems, Inc.*, 2015WL3953083 (M.D.Pa. June 29, 2015) quoting *Martin v. Brown,* 151 F.R.D. 580, 585 (W.D.Pa.1993).

The evidence will show that virtually all of Cohn's attempts to obtain evidence were rebuffed by defendant attorneys. Attempts Counsel should not be sanctioned due to defendants failure to provide documents as part of a litigation strategy.

i. <u>Cohn conducted an objectively reasonable investigation prior to filing the pleadings.</u>

Bauer's motion for sanctions sets out the incorrect analysis: at a minimum, a reasonable inquiry does not require "that an investigation into the facts be carried to the point of absolute certainty." *Forbes v. Eagleson*, 228 F.3d 471, 488 (3d Cir. 2000); *Garr v. United States Healthcare*, 22 F.3d 1274 (3d Cir. 1994).

Bauer incorrectly asserts and argues the following:

a) "Obtain a handwriting expert to inspect the original Deed or Stock Certificates" (Bauer memorandum, p.10). Yet, as Cohn's affidavit indicates the Stock Certificates and the original deed were in the control of the defendant attorneys who refused to produce them after several requests;

b) "Find any third party witnesses who could support Plaintiffs' forgery claims" (Bauer memorandum, p.10) in the darkness of secrecy. However, there was substantial circumstantial evidence of defendant attorney appearing in court when representing that Kenneth and Christine, were the property owners, at a time subsequent to the October 1, 2012 deed. See Exhibit 7. Also see transcript with defendant Bauer testifying that she was the "manager" where attorney Roland represented Kenneth and Christine Brice, as owners of the mobile home Park at a time. See Exhibit 9.

c) Speak with the accountant who prepared and filed Plaintiffs' Gift Tax Returns (Bauer memorandum, p.10). Counsel in fact did speak to the current accountant, Michael DePaul. (See affidavit Z)

d) Obtain Plaintiffs' signed Gift Tax Returns from the IRS (Bauer memorandum, p.10). For the purposes of handwriting analysis, Cohn's understanding is that what is provided by the IRS is a copy. The gift tax return which was specifically revoked by plaintiffs Kenneth and Christine Brice demonstrated that it was not their intent to gift property to their daughter. Additionally, counsel Cohn sought evidence of gifting documents, tax planning documents, none of which were provided by defendants. The documents that were provided by accountant DePaul indicated that it was not the intent of Kenneth and Christine Brice to give the property outright to defendant Bauer.

e) Investigate why Plaintiffs own daughter would forge Plaintiffs' names on the Deed and Stock Certificates (Bauer memorandum, p.10)**;** It is clear that defendant Bauer wanted to obtain her parents wealth.

f) Investigate why the Defendant Attorney would participate in the alleged forgery scheme (Bauer memorandum, p.10); Counsel Cohn specifically, met with the law firm, and sought information regarding the relationship. None was forthcoming.

g) Meet with Hoffert (Bauer memorandum, p.10); Counsel Cohn met with defendant Klonis, personally. Defendant, Hoffert, certainly could've been present if he had wanted to be. counsel met with

h) Interview or meet with Arlene Bare, Hoffert's paralegal who notarized the Deed (Bauer memorandum, p.11); The law in Pennsylvania requires that notaries keep a log. All that had to be produced by defendants was a log showing that notaries were done for the signatures of Kenneth and Christine worked on, in chronological order. In Ms. Bare's log, none were produced.

ii. <u>Availability of Evidence</u>

A reasonable inquiry requires that counsel interview the available witnesses and prior legal representatives. *Brubaker Kitchens, Inc. v. Brown*, Civ. No. 05-6756, 2006 U.S. Dist. LEXIS 89622, at *10 (E.D. Pa. Dec. 11, 2006). Bauer's statement of facts contained within the motion for sanctions recognized only the partial inquiry made by Cohn.

As set forth previously, Bauer completely ignored that Cohn had done substantial work, including having multiple conversations with defendant Bauer, where she failed to tell the truth about the alleged ownership of the properties in question; Cohn obtained evidence from attorney

John Roland; Cohn spoke with accountant Michael DePaul; Cohn met with defendant Klonis, Cohn sought evidence from defendants Klonis and Hoffert, and most importantly, Cohn met with clients who had been deprived of virtually their entire net worth, by the curious combination of a deed that was allegedly signed two and a half years before it was filed; allegedly signed stock certificates on the same day as the deed; and gift tax returns, without any other supporting documentation as to the transfer. These transfers in and of themselves demonstrated a shocking lack of the usual documentation which would be required in substantial transactions of the sort. That evidence in and of itself, raises sufficient evidence of the specter of fraud.

iii.  Evidence in the opponent's exclusive control.

Reasonable inquiry does not require the impossible. Cohn had no ability to obtain the log from Hoffert's Notary, or the sworn statement of the notary. Bauer also ignores that Cohn pled the Amended Complaint in the alternative: Cohn pled forgery but also pled that the properties were fraudulently obtained. When pleadings are made in the alternative, and the inability to obtain further information is supported by the circumstances, no sanctions should be imposed. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988). When analyzed carefully, the pleadings demonstrate that the transfers were made without the approval of Kenneth and Christine Brice. The complaint and amended complaint, state

> 49. Plaintiff Kenneth Brice did not assent to these transactions and did not sign his name on any of the attached stock certificates.
> 50. It is averred that the signatures were either forged by defendant Kliewer, Hoffert, Klonis or the Firm, or **the signatures were obtained under false pretences.**
> 51. Under no circumstances did Kenneth and Christine Brice sign documents intending to transfer virtually all of their net worth to their one daughter Kliewer without any agreements and without any compensation, effectively disinheriting all their other heirs, and leaving them with insufficient funds for their retirement. (Emphasis added)

iv.  Reliance Upon Client's Statements

A reasonable investigation may include reliance upon a client's statements when appropriate. The Second Circuit has noted that "[the new version of Rule 11 makes it [clear] that an attorney is entitled to rely on the objectively reasonable representations of the client." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995). *Brubaker Kitchens, Inc. v. Brown*, Civ. No. 05-6756, 2006 U.S. Dist. LEXIS 89622, at *10 (E.D. Pa. Dec. 11, 2006).

11

The attorney is obligated to evaluate the client's statements. If they are facially implausible, the attorney must investigate further. It is also reasonable to depend upon the statements of a long- standing clients who have demonstrated their reliability than upon a client who is unknown to the attorney.

Here Cohn met with clients who had been deprived of virtually their entire net worth, by the curious combination of a deed that was allegedly signed two and a half years before it was filed; stock certificates allegedly signed on the same day as the deed; and gift tax returns, without any other supporting documentation whatsoever as to the transfers. These transfers in and of themselves demonstrated a shocking lack of the usual documentation which would be required in substantial transactions of the sort. That evidence, met with clients who had been deprived of virtually their entire net worth, by the curious combination of a deed that was allegedly signed two and a half years before it was filed; allegedly signed stock certificates on the same day as the deed; and gift tax returns, without any other supporting documentation as to the transfer. These transfers in and of themselves demonstrated a shocking lack of the usual documentation which would be required in substantial transactions of the sort. That evidence of the transfers themselves raises sufficient evidence of the specter of fraud.

## IV. Conclusion

As set forth in detail in this memorandum there was absolutely no basis for defendant Bauer to file this motion for sanctions against attorney Cohn. As set forth in plaintiff's response, which is incorporated, there are factual grounds for Rule 11 sanctions against defendant Bauer's counsel for filing this motion against counsel Cohn.

Counsel Cohn did a reasonable investigation prior to filing the complaint, including relying on his client's reasonable statements, obtaining hundreds of pages of documents from attorney John Roland, communicating with current accountant Michael DePaul, reviewing the strange circumstances of the deed being filed two one-half years after allegedly being signed, obtaining transcripts and pleadings which show that all defendants actively asserted in court that Kenneth and Christine Brice, were the owners of the real estate at a time that it had been allegedly transferred, and finally having a meeting with defendant Bauer's attorneys and defendant attorneys seeking explanations and documents from the defendants. It is hard to imagine what more counsel Cohn could have been done, prior to filing the complaint.

Yet Cohn still pled in the alternative, that the signatures were forged "or were obtained under false pretences". The alternative pleading alone should have sufficient to prevent Bauer from filing a motion for sanctions against Cohn.

**COHN & ASSOCIATES**

BY: *Clifford B. Cohn*
**CLIFFORD B. COHN, ESQUIRE**
COHN & ASSOCIATES
620 Chestnut Street
926 Public Ledger Building
Philadelphia, PA 19106

Date: July 29, 2016

# CERTIFICATE OF SERVICE

I, the undersigned hereby certify that on this date, a true and correct copy of the foregoing was served upon the following counsel of records through the Court's ECF electronic notification system:

Ronald L. Williams, Esquire, (*RWilliams@FoxRothschild.com*)
Stephanie Nolan Deviney, Esquire, (*SDeviney@FoxRothschild.com*)
Fox Rothschild LLP
Eagleview Corporate Center
747 Constitution Drive, Suite 100
PO Box 673
Exton, PA 19341
*Attorneys for Defendant, Kim B. Bauer*

Jeffrey B. McCarron, Esquire, (*Jmccarron@swartzcampbell.com*)
Kathleen M. Carson, Esquire, (*Kcarson@swartzcampbell.com*)
Swartz Campbell LLC
50 S. 16th Street, 28th Floor
Philadelphia, PA 19102
*Attorneys for Defendants, Hoffert & Klonis, P.C., Thomas L. Klonis, Esquire and John Hoffert, Esquire*

Alan L. Frank, Esquire, (*AFrank@alflaw.net*)
ALAN L. FRANK LAW ASSOCIATES, P.C.
135 Old York Road
Jenkintown, PA 19046
*Attorney for Kenneth Brice and Christine Brice*

**COHN & ASSOCIATES**

**BY:** *Clifford B. Cohn*
**CLIFFORD B. COHN, ESQUIRE**
COHN & ASSOCIATES
620 Chestnut Street
926 Public Ledger Building
Philadelphia, PA 19106

Date: July 29, 2016