# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

_____

KENNETH BRICE and            :
CHRISTINE BRICE,             :
         Plaintiffs,       :
                            :     No. 5:15-cv-4020
     v.                      :
                            :
JOHN HOFFERT, THOMAS L. KLONIS, :
HOFFERT & KLONIS, P.C., and   :
KIM BAUER,                    :
        Defendants.       :

_____

## <u>MEMORANDUM</u>
**Defendant Kim Bauer's Motion for Summary Judgment, ECF No. 112 – Granted**
**Attorney Defendants' Motion to Dismiss, ECF No. 148 - Granted**

**Joseph F. Leeson, Jr.**                    **September 13, 2016**
**United States District Judge**

## I.     INTRODUCTION

     This case pertains to a dispute over family-owned businesses and real estate that were transferred from the plaintiff-parents to their adult defendant-daughter.  Parents allege the daughter "stole" the properties with the help of the family lawyers through a real estate deed and stock certificates that contained forged or fraudulently obtained signatures.  Daughter contends that the businesses and real estate were gifted to her from her parents.

     For the reasons set forth below, the Court grants summary judgment in daughter's favor on all federal counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, and declines to exercise supplemental jurisdiction over the remaining state law claims against daughter and the family attorneys.  This case represents a family dispute over

family businesses.  The parents' allegations against their daughter amount to nothing more than "garden variety business fraud" and do not meet the requirements of RICO.

## II.     BACKGROUND

### A.     Procedural History

On July 21, 2015, Plaintiffs Kenneth and Christine Brice, husband and wife, ("the Brices") initiated this action against their former attorneys, John Hoffert and Thomas L. Klonis, and their daughter Kim Bauer ("Bauer").  An Amended Complaint was filed on August 3, 2015, alleging three counts under RICO and thirteen state law claims.  Am. Compl., ECF No. 2.  Bauer filed an Answer on November 5, 2015, ECF No. 12, and an Amended Answer on April 6, 2016, ECF No. 67.  The Attorney Defendants[1] filed a Motion to Dismiss on November 9, 2015.  ECF No. 13.  The Motion was granted in part and denied in part on April 13, 2016.  ECF No. 74.[2] The Attorney Defendants filed an Answer with a counterclaim and a crossclaim on May 17, 2016, ECF No. 90.

This Court has federal question jurisdiction over the RICO claims pursuant to 28 U.S.C. § 1331.  Although the Amended Complaint included the family lawyers in the RICO counts, a Stipulation was filed on July 20, 2016, wherein the Brices agreed to withdraw their federal claims, as well as certain state law claims for fraud and civil conspiracy, as to the Attorney Defendants only.  ECF No. 133.  Jurisdiction against the Attorney Defendants is therefore dependent on this Court's decision whether to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

---

[1]     Defendants John Hoffert, Esquire, Thomas L. Klonis, Esquire, and the law firm of Hoffert & Klonis, P.C. are collectively referred to herein as the "Attorney Defendants."

[2]     The Order dismissed Count XVI, the request for punitive damages in Count V, the request for attorneys fees and treble damages in Count VIII, and the request for attorneys fees in the Civil Conspiracy count.  As to the Attorney Defendants' challenge to the RICO counts, this Court found "Plaintiffs have alleged sufficient facts at this stage of the proceedings to state a claim."

On July 8, 2016, the Brices filed a Motion for Summary Judgment, arguing that Bauer failed to prove that they transferred the properties with donative intent, and without improper influence.  ECF Nos. 116-118.  The same day, Bauer filed a Motion for Summary Judgment, seeking to dismiss all claims based on the Brices' failure to establish that the transfers were the subject of forgeries.  ECF No. 112.  The Attorney Defendants also filed a Motion for Summary Judgment on July 8, 2016.  ECF No. 114.  At the time this Motion was filed, the RICO claims against the Attorney Defendants had not been dismissed and they argued, inter alia, that the Brices could not establish a "pattern of racketeering activity" or a RICO "enterprise."  *Id.* Following the dismissal of the federal counts against the Attorney Defendants, they filed a Motion to Dismiss for lack of subject matter jurisdiction, asserting that there are no extraordinary circumstances warranting this Court's exercise of supplemental jurisdiction.  ECF No. 148.  On August 4, 2016, this Court issued notice to the parties pursuant to Fed. R. Civ. P. 56(f)(2)[3] that Bauer's Motion for Summary Judgment might be granted on grounds not raised in the motion, specifically whether there is sufficient evidence to support the RICO claims, and allowed the parties to file supplemental briefs.  ECF Nos. 162, 177.  These Motions have been fully briefed.

### B.    Factual Background

Kenneth Brice founded, and was the sole owner of, KC Auto Body, Inc., KC Towing, Inc., and Brice Villa, Inc.  Pls.' Add. Stmt Fact ¶ 4, ECF No. 137.  All three businesses are located at 4841-4851 Perkiomen Avenue, Reading, Pennsylvania.  *Id.* ¶ 5.  The Brices assert that they are the owners of the real estate upon which KC Auto Body, Inc., and KC Towing, Inc., are situated, and that prior to April 8, 2015, they were the record owners of the real estate upon which Brice Villa is situated.  *Id.* ¶¶ 6-7.  On January 1, 2008, the Brices executed a deed giving

---

[3]      Rule 56 provides that a court may, after giving notice and a reasonable time to respond, grant a summary judgment motion on grounds not raised by a party.  Fed. R. Civ. P. 56(f)(2).

Bauer one-third of the property on which KC Auto Body, Inc., and KC Towing, Inc., sit. *Id.* ¶ 12.

In or about 2008, Bauer began working at KC Auto Body, Inc., KC Towing, Inc., and Brice Villa, Inc., to learn from her father, Kenneth Brice, how to run the businesses. *Id.* ¶ 11; Bauer Stmt Fact ¶ 2, ECF No. 113. By 2010, Bauer had taken over management. Pls.' Add. Facts ¶ 13; Bauer Stmt Fact ¶ 3. The businesses paid to or for the Brices forty percent of the annual profits, credit card bills, annual country club dues, and weekly payments to Mrs. Brice. Pls.' Stmt Facts ¶¶ 20-24, ECF Nos. 117-118.

On September 24, 2011, Michael Depaul prepared a memorandum outlining the Brices' wishes for distribution of their assets upon their death, which included transferring the businesses through a stock purchase plan and transferring the real estate to Bauer. Pls.' Add. Facts ¶ 16. On October 4, 2012, Bauer terminated Mr. Depaul. *Id.* ¶ 20. Prior thereto, the Brices contacted Timothy Kershner, an accountant, to discuss tax preparation for the businesses. *Id.* ¶ 21; Bauer Stmt Fact ¶¶ 5-6. Mr. Kershner was engaged to prepare the personal income tax returns of the Brices and of Bauer, and the tax returns for the businesses for 2012. Pls.' Add. Facts ¶ 24; Bauer Stmt Fact ¶¶ 27-29. *But see* Pls.' Add. Facts ¶ 54 (stating that the Brices did not engage Mr. Kershner to prepare gift tax returns for them).

During the first week of December 2012, Mr. Kershner and Bauer exchanged a series of emails about her father's intention to "gift" by the end of the year. Pls.' Add. Facts ¶ 28 and Emails, Ex. 2, ECF No. 138-5. On December 12, 2012, the Brices met with Mr. Hoffert and Mr. Kershner to discuss the possible gifting, to Bauer, of the businesses and the real estate on which the Brice Villa mobile home park is located. Pls.' Add. Facts ¶ 29; Bauer Stmt Fact ¶ 6. A week later, Mr. Kershner emailed Bauer to inform her that he spoke with Mr. Hoffert, who indicated that he would obtain the Brices' signatures to transfer all shares of stock in the three businesses

4

to Bauer, as well as on a deed transferring the land where the businesses and Brice Villa sit.  Pls.'
Add. Facts ¶ 34 and Ex. 18, ECF No. 137-19.

The Brices contend that they did not intend to transfer any property to Bauer at that time.
Pls.' Add. Facts ¶ 43.  However, they purportedly signed a deed for the Brice Villa real estate
and stock certificates for the three businesses transferring the properties to Bauer.  *Id.*  25.  The
deed and the stock certificates for Brice Villa, Inc. and for KC Auto Body, Inc. are dated October
1, 2012, while the stock certificate for KC Towing, Inc. is dated January 1, 2013.  *Id.*  The Brices
assert that they have no recollection of signing these documents.  *Id.* ¶ 43.

The Brices suggest that the emails between Bauer and Mr. Kershner confirm that there
had not been any transfers by December 2012, and support their challenge to the validity of the
documents, most of which were dated October 1, 2012.  Pls.' Add. Facts ¶¶ 34-37 and Ex. 20,
ECF No. 137-21.  Bauer responds that the deed and stock certificates were backdated for tax
purposes because October 1, 2012, was the beginning of the fiscal year for those companies.
Bauer Stmt Fact ¶ 19.

On October 22, 2013, a Gift Tax Return for the Brices, reflecting a gift of the real estate,
was filed with the IRS, and included the Brices' signatures.  Pls.' Add. Facts ¶ 52.  The Brices
assert that they have no memory of signing the Gift Tax Return.  Pls.' Add. Facts ¶ 43.  On May
29, 2015, the Brices signed an amended Gift Tax Return stating that there was no completed gift
in 2012.  *Id.* ¶ 56.

The deed was maintained in the Attorney Defendants' office until it was recorded by
them on April 8, 2015, with the Berks County Recorder of Deeds.  Pls.' Add. Facts ¶ 41 and Ex.
10, ECF No. 137-11; Pls.' Resp. Bauer Stmt Fact ¶ 23, ECF No. 138.  Mr. Hoffert testified that
when he found the deed in a file, he realized it had never been recorded and therefore recorded it
promptly.  Bauer Stmt Fact ¶ 23; Pls.' Add. Facts ¶ 24.  Mr. Hoffert explained that he believed

he should have recorded it at the time it was signed.  Hoffert Dep. 103:15-23, Ex. E, ECF No. 113.  When asked how the deed was transmitted to the Berks County Recorder of Deeds Office, Mr. Hoffert testified that his secretary likely walked it over, as his office is across the street.  *Id.* at 140:16 – 141:2.[4]  The original certificates were also held by the Attorney Defendants and were never delivered to Bauer.[5]  Pls.' Add. Facts ¶ 45.  Further, the back sides of the three stock certificates are not executed and there are no executed stock powers relating thereto.  Pls.' Add. Facts ¶¶ 44 and Ex. 22, ECF No. 137-23.

The Brices claim in this lawsuit that Bauer defrauded them of their ownership in the businesses and real estate through the execution of the deed and the three stock certificates, and then tried to hide the transfers.

## III.    STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[4]    This information is contrary to the allegations in the Amended Complaint that the deed was placed in the United States mail.  Am. Compl. ¶¶ 69-70.

[5]    These undisputed facts contradict the allegations in the Amended Complaint that the stock certificates transferring shares in KC Auto Body, Inc. and in Brice Villa, Inc. were filed with the Pennsylvania Department of State, Corporation Department on April 8, 2014.  Am. Compl. ¶¶ 43, 46.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).  However, the "court need consider only the cited materials."  Fed. R. Civ. P. 56(c)(3).

## IV.   ANALYSIS

### A.     Summary judgment is entered in favor of Defendant Bauer on all RICO claims.

#### 1.     An injured party must prove that the defendant engaged in a "pattern of racketeering activity:" Taking the allegations in the light most favorable to the Brices, there are five predicate acts that could contribute to a "pattern of racketeering activity."

"RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.'"  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)).  "A common thread running throughout § 1962 is that an injured party must demonstrate that the defendant was engaged in a 'pattern of racketeering activity.'"  *Tabas v. Tabas*, 47 F.3d 1280, 1289-90 (3d Cir. 1995).

7

"'[R]acketeering activity' is defined to include a number of so-called predicate acts," *Hemi Group, LLC*, 559 U.S. at 6, such as mail fraud, wire fraud, and money laundering.  *See* 18 U.S.C. § 1961(1).

The conduct the Brices allege constitute predicate acts by Bauer is outlined in their supplemental brief.  *See* Pls.' Supp. Brief 16-22, ECF No. 174.  These offenses include wire fraud, mail fraud, and money laundering.  "To prove mail or wire fraud, the evidence must establish beyond a reasonable doubt (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme."  *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001).  To qualify as mail fraud, the evidence must demonstrate that the challenged documents "were actually sent via the United States mail, [or] there can be no finding of mail fraud."  *Jeffreys v. Exten*, No. 86-32, 1993 U.S. Dist. LEXIS 18537, at *59 (D. Del. Dec. 30, 1993).  As to wire fraud, a civil RICO "complaint must allege interstate use of the wire for each predicate act."  *Stanley v. IBEW*, 207 F. App'x 185, 189 (3d Cir. 2006).  For telephone communications, the plaintiff must present evidence that the communications crossed state lines. *See Annulli v. Panikkar*, 200 F.3d 189, 200-01 n.9 (3d Cir. 1999) (affirming the district court's grant of summary judgment on civil RICO claims because the plaintiff failed to present any evidence that the telephone conversations, during which the defendant allegedly conspired to defraud the plaintiff, took place across interstate phone lines).  However, emails sent over the Internet satisfy the interstate commerce element without proof that they actually crossed state lines. *See United States v. Fumo*, No. 06-319, 2009 U.S. Dist. LEXIS 51581, at *29-30 (E.D. Pa. 2009).  The elements of the crime of money laundering include: "(1) an actual or attempted financial transaction (2) involving the proceeds of specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) either (a) an intent to

promote the carrying on of specified unlawful activity, or (b) knowledge that the transaction is designed to promote the underlying specified unlawful activity or 'to conceal or disguise the nature [or] the source . . . of the proceeds of specified unlawful activity.'" *United States v. Morelli*, 169 F.3d 798, 804 (3d Cir. 1999) (quoting 18 U.S.C. § 1956(a)(1)).  Section 1957 makes it unlawful for any person to (1) knowingly engage or attempt to engage in a monetary transaction; (2) in property derived from specified unlawful activity; (3) that is of a value greater than $10,000.  18 U.S.C. § 1957(a).

For purposes of this opinion only, this Court will make the assumption that Bauer executed a scheme to defraud the Brices of their ownership interest in the three businesses and in real estate through the execution of the three stock certificates and the deed.  Pls.' Supp. Brief 3.

In the Amended Complaint, the Brices based their RICO claim on the assertion that the allegedly fraudulent deed was sent to the Berks County Recorder of Deeds through the United States mail, and that the stock certificates[6] transferring shares in KC Auto Body, Inc. and in Brice Villa, Inc. were filed with the Pennsylvania Department of State.  However, there is no evidence to support these allegations; rather, there is evidence that the deed was hand-delivered to the Berks County Recorder of Deeds and that the stock certificates were never given to Bauer. Consequently, the Brices have pointed to other conduct to support their RICO claims.

---

[6]      In this Court's Order dated August 4, 2016, this Court questioned whether an act of mail fraud or wire fraud involving the stock certificates could be considered as a predicate offense when RICO bars the use of securities fraud as a predicate offense.  ECF No. 162 (citing *Bald Eagle Area Sch. Dist. v. Keystone Fin.*, 189 F.3d 321, 330 (3d Cir. 1999) (holding that "a plaintiff cannot avoid the RICO Amendment's bar [of securities fraud as a predicate offense] by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud")).  However, this issue need not be decided because there is no evidence that the stock certificates were sent through interstate communications, and they are no longer relied upon by the Brices as a predicate act.

The Brices point, first, to eleven email communications and to one telephone call Bauer had with various persons, which allegedly constitute wire fraud and form a pattern of racketeering activity. *Id.* 16-19. However, only three of these communications make reference to either stock certificates or a deed. First, the email dated May 22, 2012, refers to stock as part of Mr. Brice's estate planning. But, it is undisputed that Mr. Brice's estate planning contemplates a stock transfer to Bauer; therefore, this email was not part of any scheme to defraud. The next reference appears in an email sent by Mr. Kershner, not by Bauer, on December 18, 2012, summarizing his conversation with Defendant Hoffert. Accordingly, there is no evidence that Bauer intended the wire communication to be sent, or otherwise should have anticipated that it would be sent, or that its contents furthered a scheme to defraud. The third communication is in an email sent by Bauer to Mr. Roland, dated September 10, 2014, attaching a copy of the invoice from Hoffert to the Brices charging them for his preparation of two deeds and stock certificates. *See* Ex. 20, ECF No. 15. As Bauer stated in the email that she was having Hoffert locate the items, this email may have been made in furtherance of a scheme to defraud and may count as a predicate act for wire fraud.

As to the remaining emails, *see* Pls.' Supp. Brief 16-19, there is an email from Bauer to Mr. Kershner dated October 2, 2012, to which Bauer attaches a letter from the IRS and asks that he fax her a power of attorney for Mr. Brice. As the Brices admit that Bauer had a lawful power of attorney and there are no allegations or evidence that Bauer used a power of attorney to transfer any of the properties, this email is not in furtherance of any scheme to defraud. The next alleged wire fraud is an email dated October 4, 2012, that Bauer sent to Mr. Depaul terminating his accounting services. There is no evidence that Bauer terminated Mr. Depaul as part of a scheme to defraud, and in fact, despite this email Mr. Depaul continues to serve as Mr. Brices's estate planner. *See* Kenneth Brice Dep. 464:19-466:15.

The Brices also point to the email from Mr. Kershner to Bauer dated September 6, 2012, in which he asked about whether Mr. Brice had taken any action to "sell/gift/etc. . ." and Bauer responded that Mr. Brice did not want the tax responsibility.  Pls.' Supp. Brief 16.  Arguably, Bauer sent this email intending to further her scheme to defraud by representing that Mr. Brice was interested in gifting the property and it will be considered a predicate act.

In an email dated December 6, 2012, Bauer informed Mr. Kershner that Mr. Brice stated he was serious about gifting by the end of the year.  Pls.' Supp. Brief 17-18.  However, Bauer sent this email in response to Mr. Kershner's email, which stated that he had spoken with Mr. Hoffert, learned that the Brices were ready to start gifting, and was trying to schedule a meeting for December 12, 2012.  Although responding that the Brices were serious about gifting would work to Bauer's advantage in any scheme to defraud, she also knew that Mr. Kershner was planning to meet with Mr. Brice before taking any action and that if she was lying about her father's intentions, any scheme to defraud might backfire.  Notably, Bauer was not at the meeting on December 12, 2012.  Giving the Brices the full benefit for purposes of the motion, however, the Court will consider this as a predicate act.

In an email dated December 27, 2012, Bauer responded to Mr. Kershner's inquiry as to whether Mr. Brice was planning to meet with Mr. Hoffert about gifting, by stating that they would be meeting the following day.  Pls.' Supp. Brief 18.  Mr. Kershner testified that he was asking whether they had already met to sign the documents, but Bauer's limited response to his question about whether the meeting had occurred is not sufficient to implicate Bauer in using a wire communication to further a scheme to defraud.  Moreover, according to the Brices' allegations, Bauer had a fraudulent deed and stock certificates dated for October 2012; therefore, the email communications in December 2012, in which Bauer implies that no transfers had been executed, would contradict her alleged scheme to defraud and not be in furtherance thereof.

The next sequential email is from Bauer to Mr. Kershner dated October 7, 2013, in response to Mr. Kershner's email stating that the gifting of the Brice Villa land needed to be handled by October 15, and seeking paperwork to support the value of the same.  Pls.' Supp. Brief 19.  Bauer stated simply that she would pick up the appraisal from her parents' home and send it in.  This email had no bearing on Bauer's alleged scheme to defraud as it made no reference to Mr. Brice's intentions and because the deed was signed more than a year earlier.

On February 12, 2014, Bauer emailed Cheri Palmer, a CPA who assisted Mr. Kershner on Bauer's tax return, *see* Kershner Dep. 97:1-11, stating that she did not have a gifting letter and believed Mr. Kershner had handled that with Mr. Brice.  Pls.' Supp. Brief 19.  There is nothing in this email indicating Bauer's intent to use the wire communication in furtherance of a scheme to defraud, and she essentially referred Ms. Palmer to Mr. Kershner.  Notably, Mr. Kershner is not a defendant in this case, nor is he alleged to be a co-conspirator in the RICO claims.

Next, on June 19, 2014, Bauer sent an email to Mr. Kershner asking if he had a copy of the gift tax return, and whether her father gifted the land in addition to the businesses.  Pls.' Supp. Brief 19.  Again, nothing in this communication furthers any scheme to defraud by Bauer. On the contrary, Bauer is showing her lack of knowledge regarding the gift and Mr. Brices's intent.

Next, the Brices assert that a telephone call Mr. Brice made to Bauer in 2014 or 2015 is also a wire fraud, *see* Pls.' Supp. Brief 19; however, there is no evidence that this communication occurred interstate.  *See Winsome Shoppe, Inc. v. Cynwyd Inv.*, No. 91-7013, 1992 U.S. Dist. LEXIS 16715, at *10 (E.D. Pa. Nov. 3, 1992) (dismissing the RICO claims based on a "a series of telephone calls" because the plaintiff failed to allege that any of the telephone calls were interstate).  Notably, both Bauer and Mr. Brice reside in Pennsylvania.  *See Annulli*, 200 F.3d at

201 (presuming that a series of telephone conversations between two physicians in Pennsylvania was intrastate).  Moreover, Mr. Brice, not Bauer, initiated the communication.

The Brices also assert that Bauer's 2012 Personal Income Tax Return, with executed E-file authorization, listing only KC Towing, Inc. on Schedule E, but not the other two properties is a predicate offense.  Pls.' Supp. Brief 19-20.  It appears that the Brices are suggesting either that this return contained fraudulent information by listing a property Bauer did not own, or that it contained fraudulent information by not listing all three businesses despite the fact that the stock certificates transferring ownership were dated October 1, 2012.  Either way, because this return only addresses one property, it is not consistent with Bauer's alleged scheme to defraud the Brices of all the properties.  Nevertheless, for purposes of the instant decision, this Court will consider the return as a predicate act.

The Brices further allege that Bauer knowingly filed false tax returns for Brice Villa, Inc. for 2013 and 2014, by not reporting all the revenue collected.  Pls.' Supp. Brief 20.  They refer to Bauer's deposition testimony in which she admitted to underreporting Brice Villa's gross revenue to the IRS.  *See* Bauer Dep. 47:1-3, March 15, 2016, Ex. 22, ECF No. 174-17.  Bauer testified that it had been underreported every year since at least 2008 because Mr. Brice gets cash from Brice Villa, and that she underreported the income because that is how she was taught by Mr. Brice.  *Id.* 47:1-49:9.  Independently, this act may constitute mail or wire fraud and will be discussed further herein.  However, it fails to qualify as money laundering because there is no evidence that the transaction involves the proceeds of some unlawful activity, and was being done to promote such illegal activity or to conceal the source of the proceeds of such illegal activity.

Next, the Brices refer to various communications in which Bauer allegedly represented to third parties that the Brices were the owners of the properties, even after the deed and stock

certificates were purportedly signed.  Pls.' Supp. Brief 20.  This conduct does not qualify as a predicate act because it is contrary to any alleged scheme to defraud the Brices of ownership. The Brices cannot have it both ways they cannot assert that Bauer engaged in racketeering activity by purporting to be the owner of the properties and by also disclaiming any ownership rights.  Under the allegations of the Amended Complaint, these communications do not constitute fraud.  Similarly, the 2013 tax documents for KC Towing identifying Bauer as a manager, and not an owner, as well as the 2013 quarterly tax returns for KC Auto Body purporting to be filed by Mr. Brice, do not constitute fraudulent behavior under the Brices' theory of the case.  *See* Pls.' Supp. Brief 20-21.  Moreover, there is insufficient evidence proving that each of the communications was sent interstate.

The Brices again reach to find conduct that involves racketeering activity by asserting that Bauer continued to distribute profits to, and to pay certain personal expenses of, the Brices from 2013 through 2015.  Pls.' Supp. Brief 21.  Accepting the Brices' contention that they are the owners of the properties, these payments are consistent with such conduct.  There is also no evidence that the payments themselves were made either through the United States mail or interstate wires.  As to the mailed 1099 forms confirming the payments, the Brices do not allege that the 1099s contained false information; rather, they concede that the payments were actually made. Bauer's action of mailing these forms was not in furtherance of any scheme to defraud.

Finally, the Brices point to Bauer's conduct after the instant action was initiated, *see* Pls.' Supp. Brief 22, but fail to explain how it could be in furtherance of a scheme to defraud, or could be used to support a RICO claim based on activities that occurred prior to the filing of the Amended Complaint.

Consequently, giving the Brices the benefit of any doubt, there are potentially five predicate acts of racketeering activity: (1) Bauer's email response to an email from Mr. Kershner

on September 6, 2012, stating that Mr. Brice no longer wanted tax responsibility for the
businesses; (2) an email dated December 6, 2012, in which Bauer informed Mr. Kershner that
Mr. Brice stated he was serious about gifting by the end of the year; (3) an email from bauer to
Mr. Roland dated September 10, 2014, attaching a copy of Mr. Hoffert's invoice charging the
Brices for his preparation of two deeds and stock certificates, and indicating that Bauer was
having Hoffert locate the items; (4) Bauer's 2012 Personal Income Tax Return listing only KC
Towing, Inc. on Schedule E; and (5) tax returns for Brice Villa, Inc. for 2013 and 2014,
underreporting revenue.

     **2.**     ***There is no "pattern of racketeering activity" because the nature of this action,
which involves a dispute between a daughter and her parents over the ownership of several
properties, contains no threat of future criminal activity and lacks the required continuity.***

     While RICO requires "at least two acts of racketeering activity," *see* 18 U.S.C. § 1961(e),
"Section 1961's two act requirement does not define a pattern of racketeering activity so much as
it sets a minimum condition for such patterns to exist." *Hughes v. Consol-Pennsylvania Coal
Co.*, 945 F.2d 594, 609 (3d Cir. 1991) (citing *H.J. Inc. v. Northwestern Tel. Co.,* 492 U.S. 229,
237 (1989)). "[P]roof of two acts of racketeering activity, without more, does not establish a
pattern." *See Sedima v. Imrex Co.*, 473 U.S. 479, 497 n.14 (1985) ("The implication is that while
two acts are necessary, they may not be sufficient."). Here, the Brices have met the two-acts
requirement, but they have failed to establish a pattern of racketeering activity.

     "RICO's legislative history reveals Congress' intent that to prove a pattern of
racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are
related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492
U.S. at 239. "Therefore, a pattern is established upon a showing of 'continuity' and
'relatedness'." *Browne v. Abdelhak*, No. 98-6688, 2000 U.S. Dist. LEXIS 12064, at *43-44
(E.D. Pa. Aug. 23, 2000) (citing *id.* at 239). "Under the first, or 'relatedness,' requirement of the

RICO statute, as interpreted in *H.J. Inc.*, predicate acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Tabas*, 47 F.3d at 1292 (citing *H.J. Inc.*, 492 U.S. at 240).

Considering the five predicate acts listed above, this Court concludes the last act, involving the tax returns for Brice Villa, Inc., is unrelated to the other offenses and/or to the Brices' assertion that Bauer intended to defraud them of their ownership interests in the businesses and real estate. This alleged mail fraud had no bearing on the ownership of the properties, and relates solely to whether Bauer was underreporting revenue. These are two completely different fraudulent schemes, which also preclude a continuity finding. Also, the tax returns did not further any scheme to defraud the Brices of their ownership rights; rather, Bauer testified that she was only continuing Mr. Brices's way of doing business.

Next, "[t]he requirements for continuity depend on whether the pattern is close-ended or open-ended, i.e., whether the behavior has ceased or is ongoing." *Checker Cab Phila., Inc. v. Uber Techs., Inc.*, No. 14-7265, 2016 U.S. Dist. LEXIS 28447, at \*33-36 (E.D. Pa. Mar. 7, 2016). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial[7] period of time." *H. J. Inc. v. Northwestern Bell Tel. Co.*, 109 S. Ct. 2893, 2902 (1989). "For an open-ended pattern, the plaintiff must allege a threat of continuity that exists when the predicate acts are a part of defendant's regular way of doing business." *Checker Cab Phila., Inc.*, 2016 U.S. Dist. LEXIS 28447, at \*33-36 (citing *H. J. Inc.*, 492 U.S. at 241) (quotations omitted). Further, the continuity

---

7        "[M]ost courts that have found continuity in a closed period did so in cases involving periods of several years." *United States v. Pelullo*, 964 F.2d 193, 209-10 (3d Cir. 1992) (concluding that 19 months "indicates the type of long-term criminal conduct Congress sought to eradicate in enacting RICO"). However, most courts have not found continuity to be satisfied by the duration of the predicate acts alone. *See Hindes v. Castle*, 937 F.2d 868, 875 (3d Cir. 1991).

test requires the court "to look beyond the mailings and examine the underlying scheme or artifice. Although the mailing is the actual criminal act, the instances of deceit constituting the underlying fraudulent scheme are more relevant to the continuity analysis." *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1414 (3d Cir. 1991). The courts consider "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir. 1987).

The Brices assert that the scheme may have begun in 2010 when Bauer took over managerial responsibilities, and continued through 2015 when the deed was recorded, thereby establishing a substantial period of time. However, the courts look at the period of time over which the predicate acts occurred, which is limited to September 6, 2012, to September 10, 2014.[8] There are two victims, the Brices, and one remaining perpetrator, Bauer; although this case initially alleged the involvement of the two Attorney Defendants as well. There are four predicate acts. As to the final factor, the character of the unlawful activity involves a family dispute.

In *Meade*, the court was faced with a similar type of RICO action, which the court summarized as "a dispute between two brothers wherein one accuses the other of sabotaging their joint business for the second brother's individual profit." *Meade v. Meade*, No. 91-5515, 1991 U.S. Dist. LEXIS 16654, at *16 (E.D. Pa. Nov. 18, 1991). The court, after considering the small number of victims, small number of perpetrators, the closed three-year period of racketeering activity, and the fact that the complaint involved "a family dispute, not a case about the use or operation of an enterprise through acts of racketeering characterizing its 'regular way

---

[8] This Court's analysis would be the same if it were to consider the period of the alleged fraudulent scheme and not simply the predicate offenses.

17

of conducting business,'" dismissed the RICO claim for lack of continuity. *Id.* at *15-18 (citing *Condict v. Condict*, 826 F.2d 923 (10th Cir. 1987) (finding that the "case represents an effort to fit a family dispute over a family . . . operation into the RICO mold" and dismissing the complaint for lack of continuity)), *reconsideration denied by* 1992 U.S. Dist. LEXIS 300, at *8-9 (E.D. Pa. Jan. 9, 1992) ("The basic problem with trying to fit this case into the RICO mold is that RICO was intended to target corrupt business enterprises, not corrupt power plays among the principals of business enterprises."), *aff'd* 216 F.3d 1076 (3d Cir. 2000). *See also 300 Broadway v. Martin Friedman Assocs., P.C.*, No. 08-5514, 2009 U.S. Dist. LEXIS 95069, at *21-24 (D.N.J. Oct. 13, 2009) (finding that the allegations amounted to nothing more than "'garden variety' business fraud" that were inconsistent with the requirements of RICO and therefore dismissing the claim).

Similarly here, there are a small number of victims, a small number of perpetrators, a shorter two-year period of racketeering activity, and no threat of future racketeering activity. The alleged fraudulent transfers were completed in 2015, and there is no indication that Bauer is engaged in longterm criminal activity. *See H. J. Inc.*, 492 U.S. at 241 ("Congress was concerned in RICO with longterm criminal conduct."). The Brices allege that the predicate acts demonstrate Bauer's ongoing way of conducting business. But, aside from the underreported income for Brice Villa on two tax returns, there is no evidence that any of the acts relate to the way Bauer conducts the affairs of the businesses. As to the underreporting, Bauer testified that she underreported because Mr. Brice directed her to do so and because he got cash from the business. However, payments to Mr. Brice have since ceased and there is no evidence that Bauer will continue to underreport revenue. Consequently, this Court finds that the Brices have not met the continuity requirement necessary to establish a pattern of racketeering activity. On this basis alone, summary judgment may be entered in favor of Bauer on all RICO claims.

18

### 3. No RICO predicate offense is the proximate cause of the Brices' injury; therefore, the Brices lack standing to pursue a civil RICO action.

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC*, 559 U.S. at 9 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). A plaintiff's "failure to demonstrate that the alleged RICO predicate acts were the proximate cause of his injury [means] that he lack[s] standing to bring a civil RICO action." *Amos v. Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 168 n.5 (3d Cir. 2013) (citing *Holmes*, 503 U.S. at 268); *Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2011 U.S. Dist. LEXIS 25274, at *35 (E.D. Pa. Mar. 10, 2011) (concluding that the plaintiff could "not demonstrate that the cover-up was the proximate cause of its monetary losses").

The Brices claim that they were injured when Bauer defrauded them of their ownership interests in the three businesses and in real estate, which was accomplished through the execution of the deed and stock certificates. As previously discussed, however, none of these documents were sent by interstate communications, contrary to the allegations in the Amended Complaint, and the Brices had to identify other predicate offenses to support their RICO claims. This conduct involved either Bauer's communications with Mr. Kershner about gifting, Bauer's attempt in 2014 to have Hoffert locate the transfer documents, or her allegedly fraudulent tax return documents. Although, arguably, this conduct could have been in support of Bauer's scheme to defraud her parents of the property and to conceal her actions from them, there is no evidence that these acts were the proximate cause of the Brices' harm.

The Gift Tax Return that Mr. Kershner prepared for the Brices in 2013 was amended in 2015. Accordingly, even if the Gift Tax Return was prepared with the allegedly fraudulent documents, the Brices have not established, nor do they allege, any injury as a result of the 2013

Gift Tax Return and subsequent amendment.  Further, there is no allegation that Mr. Kershner

was a co-conspirator in the RICO claims, participated in obtaining the Brices' signatures on the

documents, or conspired to obtain fraudulent or forged transfer documents.  Accordingly, the

Brices have not shown that their injury was caused by any wire communication[9] with Mr.

Kershner.

Similarly, Mr. Roland is not alleged to have been involved with the fraudulent transfers,

and Bauer's email to him in 2014, stating that she was attempting to retrieve the documents from

Mr. Hoffert, did not result in any injury to the Brices.  Notably, this communication occurred

more than a year after the documents were purportedly signed and almost a year before the deed

was recorded.  The fact that Mr. Hoffert did not locate the deed for another ten months is

evidence that these communications were not the proximate cause of the Brices' injuries.

Finally, there is no evidence, or allegation, that any of the alleged fraudulent tax returns

directly caused the Brices' injury.  *See Knopick v. UBS Fin. Servs.*, 121 F. Supp. 3d 444, 462

(E.D. Pa. 2015) (concluding that the fact that the plaintiff may have been an indirect victim of a

tax fraud scheme "does not establish proximate cause").  Furthermore, the victim of fraudulent

tax returns is the taxing authority, not an individual plaintiff.  *See DelRio-Mocci v. Connolly

Props.*, 672 F.3d 241, 256 (3d Cir. 2012).

Accordingly, Bauer is also entitled to summary judgment on the RICO claims based on

the Brices' failure to establish that any predicate act was the proximate cause of their injury.

Moreover, having determined that no RICO predicate offense was the proximate cause of the

Brices' injuries, they lack standing to bring a civil RICO action.  *See Amos*, 509 F. App'x at 168

n.5; *Jones v. Baskin, Flaherty, Elliot & Mannino, P.C.*, 670 F. Supp. 597, 600 (W.D. Pa. 1987)

---

[9]      Had the other emails, which this Court concluded were not in furtherance of Bauer's
scheme to defraud, been included as predicate acts, they too would have no direct ties to the
Brices' alleged injury.

(dismissing RICO claims for the plaintiff's lack of standing because the defendant's fraudulent tax returns were not causally related to the plaintiff's injuries in the form of understated partnership profits upon termination).

Based on the Brices' failure to establish a pattern of racketeering activity and, also, that their injuries were proximately caused by the alleged predicate acts, summary judgment is entered in favor of Bauer on all RICO counts. Although it is unnecessary to consider the merits of the individual counts, Bauer is entitled to summary judgment on each of the RICO claims for additional reasons, which are discussed below.

### 4. The Brices cannot establish a violation of 18 U.S.C. § 1962(c) because Bauer did not commit a pattern of racketeering activity through the RICO enterprise.

Section 1962(c) of RICO provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a plaintiff must allege facts to show that defendants: (1) conducted; (2) an enterprise; (3) through a pattern; (4) of racketeering activity; (5) which resulted in damage to plaintiff's business or property." *Checker Cab Phila., Inc.,* 2016 U.S. Dist. LEXIS 28447, at *33-36. "For purposes of stating a specific RICO claim, . . . the definition of the term 'enterprise' varies in accordance with the substantive provision involved." *Atiyeh v. Casino Mgmt. Servs.*, 1996 U.S. Dist. LEXIS 3842, at *10-11 (E.D. Pa. Mar. 25, 1996). "[T]he 'enterprise' in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." *Nat'l Org. for Women v. Scheidler*, 114 S. Ct. 798, 804 (1994).

For the purposes of this opinion only, this Court will assume that KC Auto Body, Inc., KC Towing, Inc., and Brice Villa, Inc. are engaged in, or otherwise affect, interstate commerce, and consist of a RICO enterprise distinct from Bauer. Nevertheless, there is no evidence that Bauer conducted the affairs of the enterprise, the three businesses, through a pattern of racketeering activity. In addition to the deficiencies discussed above, four of the five possible predicate acts constituting the alleged pattern were conducted by Bauer individually, not through any of the businesses. Specifically, the two emails regarding Mr. Brice's alleged intent to make a gift, the email about acquiring documents from Hoffert, and Bauer's personal income tax returns were not made in Bauer's capacity as an employee or owner of the businesses. To the extent that Bauer filed the tax returns for Brice Villa, Inc. for 2013 and 2014 through the enterprise, this predicate act, for the reasons previously discussed, was not sufficiently related to the other predicate offenses to be considered as part of the pattern of racketeering activity. Furthermore, this conduct is not sufficient to create an independent pattern of racketeering activity and did not cause any damage. *See Sedima*, 473 U.S. at 497 ("Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts."). Accordingly, the Brices have failed to present "evidence to show the existence of every element essential to its case." *See Celotex*, 477 U.S. at 323. Summary judgment in Bauer's favor is therefore entered as to Count I, asserting a violation of 18 U.S.C. § 1962(c).

**5.      *In the absence of two distinct injuries, the Brices' claim under 18 U.S.C. § 1962(b) fails.***

Under section 1962(b), "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). To plead a viable claim

under this section, a plaintiff must allege facts to show that: (1) defendant has an interest in an enterprise; (2) defendant gained or maintained that interest through a pattern of racketeering; and (3) the enterprise affects interstate commerce." *Checker Cab Phila., Inc.*, 2016 U.S. Dist. LEXIS 28447, at *38-39. "In order to recover under this section, a plaintiff must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts." *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993).

The Brices have not alleged, nor proved, two separate injuries. Accordingly, summary judgment is entered on Count II, 18 U.S.C. § 1962(b), in favor of Bauer.

**6.     The Brices cannot sustain a claim for conspiracy under 18 U.S.C. § 1962(d) because there was no violation of any subsection.**

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. 1962(d). Count III of the Amended Complaint asserts that Bauer and the Attorney Defendants conspired to violate subsections (b) and (c) of RICO. Am. Compl. ¶¶ 104, 106.

Having determined that the Brices have failed to produce evidence to establish a claim under subsections (b) and (c), the conspiracy count cannot proceed. *See Gagliardi v. Equifax Info. Servs., LLC*, 2011 U.S. Dist. LEXIS 10634 (W.D. Pa. Feb. 3, 2011) (holding that when a plaintiff cannot establish a RICO claim under subsection (c), summary judgment should be awarded on the claim under § 1962(d) as well). Thus, summary judgment in favor of Bauer is entered as to Count III.

**B.     The Court declines to exercise supplemental jurisdiction over the remaining state law claims.**

The remaining counts in the Amended Complaint assert violations of state law. Pursuant to 28 U.S.C. § 1367(c)(3), the "district courts may decline to exercise supplemental jurisdiction over a claim. . . if . . . [it] has dismissed all claims over which it has original jurisdiction." "A

district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  In deciding whether to exercise supplemental jurisdiction, the district courts should consider factors such as judicial economy, convenience, and fairness to litigants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if these [factors] are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them").  The United States Supreme Court has further advised that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

Here, because all the federal claims are being dismissed before trial and there are more than a dozen state law claims, the Court finds that it is in the interests of comity to decline to exercise jurisdiction.  Further, all Defendants have asked this Court not to exercise supplemental jurisdiction, and there appears to be little prejudice or inconvenience to the Brices if they are required to pursue their claims in state court.  Moreover, the Brices knew when they brought this action in federal court that they ran the risk of having their state law claims dismissed and knew, early in the proceedings, that there was a challenge to the RICO claims.  Accordingly, this Court will decline to exercise supplemental jurisdiction.  *See Annulli*, 200 F.3d at 202-03 (affirming the district court's decision not to exercise supplemental jurisdiction under § 1367(c) after granting summary judgment on the RICO claims because: (1) despite the "great deal of time engaged in discovery," the plaintiff could use this evidence to pursue his claims in state court thereby satisfying the judicial economy and convenience factor; (2) dismissal met the fairness factor as the plaintiff "and his lawyers knowingly risked dismissal of his pendent claims when they filed suit in federal district court and invoked the Court's discretionary supplemental jurisdiction power;" and (3) "comity favored allowing the state court to hear the state law claims");

*Matthews v. Kidder, Peabody & Co.*, No. 95-85, 2000 U.S. Dist. LEXIS 23102, at *120 (W.D. Pa. Aug. 18, 2000) (concluding that where all the federal claims brought under RICO had been dismissed, there was "little to gain in the way of convenience or judicial economy in having this court hear a case now consisting entirely of state claims" and dismissing the state law claims without prejudice for lack of jurisdiction).  All remaining claims are therefore dismissed without prejudice for lack of jurisdiction.

## V.   CONCLUSION

The Brices do not rely on the RICO predicate acts alleged in the Amended Complaint because the evidence obtained during discovery has established that Bauer did not commit the alleged activities.  Accordingly, they attempted to find additional conduct that might qualify as predicate acts under RICO.  This Court concludes that of the five predicate offenses that might have been made in furtherance of Bauer's scheme to defraud, one was unrelated and the others fail to meet the continuity requirement to establish a pattern of racketeering activity.  Moreover, the Brices have not provided any evidence that their injury was proximately cause by any of the alleged predicate acts.  There is also no evidence to establish a RICO claim under 18 U.S.C. § 1962(c) because Bauer did not use the businesses as a vehicle through which to commit the predicate offenses.  The RICO claim under Section 1962(b) is also unsupported because the Brices have failed to show two distinct injuries.  The RICO conspiracy count pursuant to 18 U.S.C. § 1962(d) therefore also fails.  For each of these reasons, summary judgment is entered in favor of Bauer on the RICO claims in Counts I, II, and III.

Having dismissed all of the federal claims, which were the basis for this Court's jurisdiction, and after considering judicial economy, convenience, fairness to litigants, and comity, this Court declines to exercise supplemental jurisdiction over the remaining state law claims.  The remaining counts are therefore dismissed without prejudice to an action to be filed

in state court.[10]  It is important for the parties to know that the period of limitations for these claims was tolled during the pendency of this action and "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.")

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[10]    "Because the original complaint was not filed in state court, the Court cannot remand this case. Rather, the Court will dismiss the complaint . . . without prejudice for an action to be filed in state court."  *Gallo v. Wash. County*, No. 08cv0504, 2009 U.S. Dist. LEXIS 7958, at *30 n.8 (W.D. Pa. Feb. 4, 2009).