UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

KENNETH BRICE and                       :
CHRISTINE BRICE,                        :
            Plaintiffs,  :
                          :    No. 5:15-cv-4020
        v.                          :
                          :
JOHN HOFFERT, THOMAS L. KLONIS,         :
HOFFERT & KLONIS, P.C., and             :
KIM BAUER,                              :
            Defendants.  :
_____

**O P I N I O N**
**Defendant Kim Bauer's Motion for Sanctions, ECF No. 126 – Denied**

**Joseph F. Leeson, Jr.**                                                             **August 7, 2019**
**United States District Judge**

**I.    BACKGROUND**

This case arose from a dispute over family-owned businesses and real estate that had been transferred from Mom and Dad (plaintiffs) to their adult Daughter (defendant). Mom and Dad alleged Daughter "stole" the properties with the help of the family lawyers through a real estate deed and stock certificates that contained forged or fraudulently obtained signatures. Daughter responded that the businesses and real estate were gifted to her from Mom and Dad. There was extensive litigation on the claims, which ended in this Court on September 13, 2016, when summary judgment was granted in favor of Mom and Dad on the sole federal count alleging a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961. The Court declined to exercise supplemental jurisdiction over the remaining state law claims and denied all pending motions.

Litigation of the state law claims then proceeded through the state courts. Because this Court had had an obligation to decide Daughter's pending Motion for Sanctions on the merits, however, the matter was returned from the Third Circuit Court of Appeals for a decision on the merits of the sanctions motion. *See* ECF Nos. 223, 225. A decision on the Motion for Sanctions was stayed pending final resolution of the state court proceedings.[1] *See* Order dated July 14, 2017, ECF No. 247 (explaining the reasons for the stay (citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (providing that "the court may defer its ruling . . . until final resolution of the case . . ."); *Fiala v. B&B Enters.*, 738 F.3d 847 (7th Cir. 2013) (Posner, J.) (holding that "what the district judge should have done, given his uncertainty about the merits of the motion [for sanctions] and his belief that the state court litigation might cast light on those merits, was to stay action on the motion pending findings in the state case that might undermine or bolster it")). After a jury trial and post-trial motions, the state court proceedings concluded. A hearing was thereafter scheduled in this Court on the Motion for Sanctions.

In the Motion for Sanctions,[2] Daughter asserts that Mom and Dad, as well as the attorneys who represented her parents in this action (Clifford B. Cohn, Esquire and Alan L. Frank, Esquire) should be held jointly liable to her for the attorney's fees, expenses, and costs she incurred in this litigation.[3] Daughter contends that this action was premised on the assertion that she, along with Attorney Defendants John Hoffert, Thomas Klonis, and Hoffert & Klonis, PC, colluded to forge her parents' signatures on a property deed and on stock certificates, but

---

[1] The Motion for Sanctions is based on filings in federal court, not state court.
[2] The following is only a summary of the arguments and is by no means comprehensive.
[3] The original Complaint, signed by Attorney Cohn only, was filed on July 21, 2015. A few weeks later, before service was complete, an Amended Complaint, also signed by Attorney Cohn only, was filed. On February 4, 2016, Daughter filed a motion seeking to disqualify Attorney Cohn. Thereafter, also on February 4, 2016, Attorney Frank entered his appearance on behalf of Mom and Dad. Attorney Cohn did not file any documents after that date on behalf of Mom and Dad. He was disqualified as counsel on July 25, 2016.

that the "forgery claims are complete fallacies." [4] Daughter asserts that none of the twelve third-party witnesses deposed testified that the signatures were forged; rather, a number of people testified that they witnessed Mom and Dad sign the deed. Daughter further contends her parents' statements are inconclusive or contradictory, in themselves and to other evidence, that the gift tax returns defeat her parents' claims, and that her parents' own handwriting experts would not opine that the signatures were forged.[5]

Mom and Dad[6] respond that the Motion for Sanctions is based entirely on the forgery claims. They argue that the claims are not dependent on an actual forgery, but may by proven by evidence that the signatures were obtained under false or fraudulent pretenses. Mom and Dad assert that there is evidence to support these claims, including emails indicating their intent to "consider" gifting sent months after the transfers to Daughter were allegedly complete. Additionally, they sought leave to amend the challenged paragraphs within twenty-one days of service of the sanctions motion. *See* Fed. R. Civ. P. 11(c)(2) (stating that a motion for sanctions must be served, "but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets").

---

[4] There was no separate count brought for forgery; rather, the state law claims pled fraud, conspiracy, breach, etc. The theory underlying the claims was that Mom and Dad's signatures on the deed and stock certificates were "either forged . . . or . . . obtained under false pretenses." *See, e.g.* Am. Compl. ¶ 50, ECF No. 2. The reference to "forgery claims" herein therefore refers to allegations that the signatures of Mom and Dad were forged.

[5] Daughter makes this assumption based on the statements of counsel for Mom and Dad that they had hired a handwriting expert, and because an expert report was never produced it must have been negative to Mom and Dad. Attorney Frank testified, however, that he decided not to hire a handwriting expert but instead hired a polygrapher. Regardless, Daughter did produce an expert report indicating that Mom and Dad signed the deed and stock certificates.

[6] The closing arguments on behalf of Mom and Dad were presented by Attorney Frank and therefore also apply to the request for sanctions against him, which is discussed below.

Next, Daughter argues that Attorney Cohn failed to conduct a proper investigation to verify any alleged facts before filing the Complaint. Finally, Daughter, citing a letter Attorney Frank sent after entering his appearance that requested a continuance so he could "become acclimated with the case," asserts that Attorney Frank failed to conduct a proper investigation before entering the case. Attorney Cohn and Attorney Frank respond that the allegations of an insufficient investigation before filing and/or entering the case are untrue, as each met with Mom and Dad and reviewed estate planning documents, which supported Mom and Dad's statements, before filing and/or entering the case.

Since Daughter's Motion for Sanctions was filed on July 15, 2016, Daughter, Mom and Dad, Attorney Cohn, and Attorney Frank electronically submitted hundreds of pages of argument and of exhibits pertaining to the Motion. *See, e.g.* ECF Nos. 126, 129, 149, 153, 165, 173, 232, 234-246. They also sent the Court dozens of emails, containing hundreds of pages of supplemental arguments. The Court has had numerous telephone conferences with the parties, and a hearing, although not required,[7] was held on the Motion for Sanctions. Additionally, even before the sanctions motion was filed, this Court was heavily involved in the instant litigation: deciding motions, holding conferences, and resolving disputes. Consequently, the Court is intimately familiar with the alleged facts, the disputed issues, and the respective arguments of all parties. Because the Court writes primarily for the parties, and given the extensive history of this case, only the facts necessary for a decision are discussed herein.

For the reasons set forth below, the Motion for Sanctions is denied. No fees or costs are awarded to any party regarding litigation of the sanctions motion.

---

[7]  There is no right to a hearing on a motion for sanctions. *See Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 279 (3d Cir. 1999); *Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Sci., Inc.*, 858 A.2d 457, 469 (D.C. 2004) ("Evidentiary hearings on Rule 11 motions are by no means favored.").

## II. STANDARD OF REVIEW

Rule 11 of the Federal Rules of Civil Procedure provides that the court may sanction an attorney or party for presenting to the court "a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—" for an improper purpose, asserting frivolous arguments,[8] or alleging facts that lack evidentiary support. *See* Fed. R. Civ. P. 11(b)-(c). "The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533 [] (1991), with reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact.' *Jones v. Pittsburgh National Corp.*, 899 F.2d [1350, 1359 (3d Cir. 1990)]." *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 289 (3d Cir. 1991). "The wisdom of hindsight should be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Mary Ann Pensiero v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (internal quotations omitted). Any doubt as to the filer's reasonable belief or inquiry should be resolved in favor of the party charged with the violation." *Sanders v. Hale Fire Pump Co.*, C.A. No. 87-2468, 1988 U.S. Dist. LEXIS 5239, at *2-3 (E.D. Pa. June 1, 1988). "Sanctions are to be applied only 'in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous.'" *Ario v. Underwriting Members of Syndicate 53*, 618 F.3d 277, 297 (3d Cir. 2010) (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)).

---

[8] *But see* Fed. R. Civ. P. 11(c)(5)(A) (providing that monetary sanctions may not be imposed upon a represented party for presenting frivolous arguments).

## III. ANALYSIS

### A. Daughter's request for sanctions against Mom and Dad is denied.

Unfortunately, the courts are not unfamiliar with the type of family dispute seen in this case. In *Falah*, the district court denied a motion for sanctions against the plaintiff and the plaintiff's attorney for their alleged failure to conduct a reasonable inquiry before filing suit. *See Falah v. Statt Corp.*, No. 08-1269 (JBS), 2008 U.S. Dist. LEXIS 104738 (D.N.J. Dec. 16, 2008). The complaint alleged that the defendant-sisters[9] refused to comply with their mother's directive to transfer 20% interest in the family company to their other sister, the plaintiff; and, instead, the defendant-sisters kept their mother's interest for themselves. The defendant-sisters argued that sanctions were warranted because the plaintiff-sister's claims of an inter vivos gift from their mother lacked factual support. Although the plaintiff-sister was unable to prove an inter vivos gift, the court concluded that the conduct of the plaintiff-sister and of counsel "was not so abusive as to require sanctions." *Id.* at *4. The court "recognize[d] the acrimonious and litigious family history behind [the] action," but found "insufficient evidence that th[e] complaint was brought to harass Defendants." *Id.*

Similarly here, Mom and Dad did not improperly initiate litigation with the intent to harass their Daughter. Rather, this action evolved from an unresolvable family matter. There are facts that support Mom and Dad's theory of the case, including the late filing of the deed, Dad's testimony, deemed truthful during a polygraph examination, that he did not intent to transfer any of his properties, businesses, or stock certificates to Daughter, memoranda memorializing Dad's intent regarding estate planning, and emails Dad sent months after the alleged transfer to Daughter in which he stated that was ready to start gifting, as well as the circumstances that

---

[9] Also named as a defendant was the family company.

provided Daughter with intimate knowledge of the businesses and properties and with access to records, deeds, stock certificates, and documents requiring the signatures of her parents. Because Mom and Dad reasonably believed the instant litigation was well-grounded, *see Sanders*, 1988 U.S. Dist. LEXIS 5239, at *2-3 (holding that "[a]ny doubt as to the filer's reasonable belief or inquiry should be resolved in favor of the party charged with the violation"), their conduct did not violate Rule 11. *See Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994) (holding that because "Rule 11 targets abuse" only "abusive litigation or misuse of the court's process" warrants the imposition of sanctions (quoting *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir. 1988))). Thus, the initiation and continuation of the above-captioned case was neither abusive nor done with the intent to harass.

Furthermore, unlike the complaint in *Falah*, which could not even make it beyond discovery, Mom and Dad's claims proceeded to a jury trial in state court. Because the jury determined that (1) the transfers were "done freely and voluntarily with knowledge of the consequences and free from undue influence or deception" and (2) there was no fraud in the deed transfer, but also (3) held Daughter liable for breach of contract and for unjust enrichment, *see* Verdict Slip, Ex. 64, ECF No. 265-1, all parties suggest that the jury verdict supports their arguments. Regardless of who's position is supported by the verdict, the fact that the claims proceeded to trial shows that they were not "patently unmeritorious or frivolous"[10] *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir. 1997) (finding that the district court did not abuse its discretion in denying the motion for sanctions and highlighting the district court's statements that (1) although the defendant prevailed at trial, it is clear the plaintiff's complaint was not

---

[10] *See Ario*, 618 F.3d at 297 ("Sanctions are to be applied only in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." (internal quotations omitted)).

frivolous in that the jury did find [Perry] had been subjected to harassment, (2) the plaintiff is a troubled and somewhat confused individual, and (3) the record displayed tenacious advocacy by attorneys on both sides, but no clear evidence of bad-faith conduct meriting sanctions); *Gimbel v. Feldman*, CV-93-4761 (CPS), 1995 U.S. Dist. LEXIS 21429, at *13 (E.D.N.Y. Aug. 8, 1995) (denying the defendant-sister's motion for sanctions because the complaint, which sought to recover assets once held by the mother of the plaintiff-brother and defendant-sister that were allegedly transferred as a result of fraud and undue influence, because "the complaint passes muster under Rule 8 and Rule 12"). This case therefore does not present the type of "exceptional circumstance" wherein sanctions should be granted.

The Motion for Sanctions as to Mom and Dad is denied.

**B.     Sanctions against Attorney Cohn and Attorney Frank are denied.**

In addition to the reasons set forth above for denying the request for sanctions against Mom and Dad, the Motion for Sanctions against Attorney Cohn and Attorney Frank is also denied because counsel's inquiries were reasonable. *See Falah*, 2008 U.S. Dist. LEXIS 104738 (denying the defendant's motion for sanctions against the plaintiff's attorney for allegedly failing to conduct a reasonable inquiry before filing).

Rule 11 "provides that an attorney who fails to either 1) read the pleading; 2) make a reasonable inquiry into the factual and legal legitimacy of the pleading; or 3) file the pleading only for a proper purpose, shall be sanctioned." *Simmerman*, 27 F.3d at 62. "In gauging the reasonableness of an attorney's pre-filing inquiry, the Advisory Committee Notes to Rule 11 suggest consideration of four factors: the amount of time available to the signer for conducting the factual and legal investigation; the necessity for reliance on a client for the underlying factual information; the plausibility of the legal position advocated; and whether the case was referred to the signer by another member of the Bar." *Mary Ann Pensiero*, 847 F.2d at 95 (considering,

8
080719

also, a fifth factor imposed by the Fifth Circuit: "the complexity of the legal and factual issues implicated"). "Rule 11 sanctions must be based on [counsel's] objective knowledge or belief at the time of the filing of a challenged paper." *Jones*, 899 F.2d at 1359; *Mary Ann Pensiero*, 847 F.2d at 95 ("We further stressed that proper Rule 11 analysis should focus on the circumstances that existed at the time counsel filed the challenged paper. Imposing a continuing duty on counsel to amend or correct a filing based on after-acquired knowledge is inconsistent with the Rule.").

    1.    **Attorney Cohn**[11]

In 2014, Attorney Cohn represented Mom and Dad, along with Daughter, in a legal issue involving an easement on one of the family properties. He was therefore familiar with the parties' business relationships before consulting with Mom and Dad about the instant action. Nevertheless, before filing suit, Attorney Cohn had numerous meetings with Mom and Dad to discuss their allegations, reviewed the gift tax returns, spoke with Timothy Kershner[12] (Mom and Dad's accountant), and met with the Attorney Defendants. Although Daughter faults Attorney Cohn for not also speaking with her and for not obtaining other documents and evidence, counsel's investigation needs only be reasonable, not exhaustive. Furthermore, Rule 11 allows counsel to present arguments formed after a reasonable inquiry that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* Fed. R. Civ. P. 11(b)(3). Because the issues here are essentially a "he-said, she-said" dispute, Attorney Cohn had to rely heavily on what Mom and Dad told him. Given the plausibility of the claims based

---

[11] Attorney Cohn testified at the sanctions hearing regarding his pre-filing investigation and also submitted an affidavit discussing his efforts, *see* Pl. Hrg Ex. 47.
[12] Daughter challenged Attorney Cohn's testimony that he met with Mr. Kershner before filing the complaint because it was not mentioned in Attorney Cohn's affidavit. Attorney Cohn explained that he had forgotten. Regardless of whether or not Attorney Cohn met with Mr. Kershner, the pre-filing investigation was reasonable.

9
080719

on Mom and Dad's version, as discussed above, it was reasonable for Attorney Cohn to rely on them for the factual allegations. *See Mary Ann Pensiero*, 847 F.2d at 95; *Pannecouk v. Yancey*, No. 85-5067, 1988 U.S. Dist. LEXIS 18223, at *5-7 (E.D. Mich. Mar. 7, 1988) (denying the motion for sanctions against the plaintiff's counsel, who filed a complaint against the plaintiff's accountant for allegedly preparing a financial statement and income tax returns based on false information, because the only sources of information were the plaintiff, whom counsel interviewed, and the documents in the plaintiff's possession). Also, Attorney Cohn testified that he was "shocked" Daughter had changed accountants three times in three years and that this factored into his decision to file the complaint, as did the "suspicious" timing of the deed. For all these reasons, Attorney Cohn satisfied his obligation to "'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation." *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987) (analogizing the obligation Rule 11 places on counsel "to the railroad crossing sign, 'Stop, Look and Listen'"). Next, because Attorney Cohn prepared the pleadings, he obviously read the papers before they were filed. *See Simmerman*, 27 F.3d at 62 (setting forth the circumstances under which an attorney may be sanctioned). Finally, Attorney Cohn's efforts at trying to resolve the matter during his discussions with the Attorney Defendants before filing,[13] as well as the fact that Mom and Dad's claims were reasonably

---

[13] Daughter alleges that Attorney Cohn tried to pressure one of the Attorney Defendants into advising Daughter to return the properties after being told to have no contact with her. Because this conduct, if true, was performed before the instant action was filed, Rule 11 does not govern the behavior. To the extent that Daughter makes this allegation to suggest that Attorney Cohn initiated this action for an improper purpose, the argument is self-defeating because the point of pressuring one of the Attorney Defendants into advising Daughter to return the properties, as Daughter claims, would be to get the property, which was allegedly "stolen," back to Mom and Dad such that litigation would not be necessary. This evidence does not show that Attorney Cohn filed the complaint for an improper purpose, or that the instant action "constituted abusive litigation or misuse of the court's process." *See Teamsters Local Union No. 430*, 841 F.2d at 68 ("Rule 11 sanctions are appropriate regarding the initiation of a lawsuit only if the filing of the complaint constituted abusive litigation or misuse of the court's process.").

believed to be well-grounded and could not be settled without court intervention, show that he did not bring the instant action for an improper purpose. *See id.* The request for sanctions against Attorney Cohn is therefore denied.

### 2. Attorney Frank[14]

Before entering his appearance, Attorney Frank read the Amended Complaint and the exhibits attached thereto. Attorney Frank had a lengthy in-person meeting with Dad and Attorney Cohn, during which he thoroughly interviewed them about Dad's claim that he did not intend to transfer the properties and stock to Daughter. Attorney Frank also met with Michael DePaul, Mom and Dad's then-current accountant that filed the amended gift tax return in 2016 and who had also served as their accountant from 2008 to 2012. Attorney Frank received and reviewed additional documentation, including the handwritten agreement between Dad and Daughter outlining their business relationship and a 2011 memorandum regarding Dad's estate planning. Attorney Frank then entered his appearance in this case on behalf of Mom and Dad.

This pre-filing investigation was sufficient for Attorney Frank to meet his obligations under Rule 11. As discussed above regarding Attorney Cohn, Attorney Frank had to rely heavily on the facts relayed to him by Mom and Dad because of the nature of the dispute ("he-said, she-said").[15] Regardless, Attorney Frank believed that the documentary evidence "corroborated Plaintiffs' allegations." *See* Frank Aff. ¶ 7. For the reasons previously explained, the legal claims were plausible. Also, in gauging the reasonableness of Attorney Frank's investigation, the Court has considered that the case was referred to Attorney Frank from Attorney Cohn and

---

[14] Attorney Frank testified at the sanctions hearing regarding his investigation before entering his appearance in this case and also submitted an affidavit discussing his efforts, *see* Pl. Hrg Ex. 46.

[15] At the time Attorney Frank entered his appearance, the parties were less than one month into the discovery period.

11
080719

that Attorney Frank entered his appearance less than two hours after Daughter moved to disqualify Attorney Cohn. Attorney Frank's inquiry prior to entering his appearance was reasonable. His subsequent filings and the continuation of this lawsuit were also proper. Although there was evidence produced in discovery, such as the handwriting expert of Daughter and depositions suggesting that the documents were not forged and that Mom and Dad intended to transfer the deed and stock certificate, there was also evidence supporting Mom and Dad's allegations and claims. Once again, this case arose from a hostile family dispute with hotly contested factual issues that could not be resolved without court intervention. It does not present the type of exceptional circumstances in which sanctions are appropriate. The request for sanctions against Attorney Frank is denied.[16]

### C. The request for fees and costs against Daughter is denied.

The request[17] for fees and costs against Daughter's counsel under 28 U.S.C. § 1927 is denied.[18] Fees and costs under § 1927 are only available against an attorney (not a represented

---

[16] Mom and Dad and Attorney Frank also argue that the Motion for Sanctions should be denied because they satisfied the safe-harbor provision of Rule 11. *See* Fed. R. Civ. P. 11(c)(2) (providing that a motion for sanctions may not be presented to the court "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service"). The Court notes that although Mom and Dad and Attorney Frank timely offered to amend the allegations challenged by Daughter in the Motion for Sanctions, the offer was not to simply withdraw the challenged contentions. Rather, they sought to add facts, which all Defendants argued presented new theories of liability after summary judgment motions were filed. *See* ECF Nos. 151, 154. However, because the Motion for Sanctions is denied on its merits, there is no need to address whether this proposed amendment was an "appropriate correction."

[17] *See* Closing Argument of Parents and of Attorney Frank dated November 7, 2018, ECF No. 269 (stating that Plaintiffs and Attorney Frank should be awarded their costs, fees, and expenses in opposing the Motion for Sanctions because Bauer "deliberately misstated Plaintiffs' theories of the case" and pursued the Motion "for the improper purposes of intimidation and increasing costs"); Closing Statement of Attorney Cohn dated November 7, 2018, ECF No. 271 (asking the Court to "grant Plaintiffs' cross-motion for their costs and attorney's fees").

[18] Although Parents and Attorney Frank contend that Daughter "misused and abused Rule 11," *see* Parents Closing 2, sanctions under Rule 11 are not available to them because a Rule 11 motion must "be made separately from any other motion," Fed. R. Civ. P. 11(c); *Wilson v.*

party) who "multiplies the proceedings in any case unreasonably and vexatiously." *See* 28 U.S.C. § 1927. Section 1927 limits an award "to those situations where an attorney has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." *LaSalle Nat'l Bank v. First Conn. Holding Grp., L.L.C. XXIII*, 287 F.3d 279, 288 (3d Cir. 2002) (explaining that an award under § 1927 is limited to excess costs and expenses incurred because of the misconduct). Section 1927 "sanctions are intended to deter an attorney from intentionally and unnecessarily delaying judicial proceedings, and they are limited to the costs that result from such delay." *Id.* Such "sanctions"[19] should only be issued "in instances of a serious and studied disregard for the orderly process of justice" upon "a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Id.* at 288-89.

Here, the request for fees and costs under § 1927 is largely premised on the alleged misstatements regarding Mom and Dad's theory of the case and the demands in the Motion for Sanctions. Mom and Dad and Attorney Frank assert that the Motion for Sanctions repeats arguments that were asserted in the Motion for Summary Judgment and Motion to Disqualify. *See* Parents Closing 3. However, both the summary judgment motion and the disqualification motion were still pending at the time the Motion for Sanctions was filed. Because the success of

---

*Equifax Inc.*, No. 97-1109, 1998 U.S. Dist. LEXIS 7915, at *6 n.2 (W.D. Pa. Feb. 3, 1998) (finding that the defendant, who requested sanctions in a brief, did not satisfy Rule 11's requirement that a motion for sanctions be filed in a separate motion); *Forte v. O'Dwyer & Bernstien*, No. 93-CV-4415, 1994 U.S. Dist. LEXIS 7770, at *1 n.2 (E.D. Pa. June 8, 1994) (refusing to consider the defendants' request for sanctions made in response to the motion to dismiss because the defendants did not file a separate motion for sanctions or otherwise follow the procedures outlined in Rule 11(c)).

[19]   The Third Circuit Court of Appeals has referred to § 1927 "sanctions," *see, e.g. LaSalle Nat'l Bank*, 287 F.3d at 288-89, but the circuit court has explained that § 1927 does "not concern 'sanctions,' but rather deal[s] solely with fees and costs," *Feingold v. Graff*, 516 F. App'x 223, 228 n.6 (3d Cir. 2013).

the arguments previously raised was unknown at the time the sanctions motion was filed, counsel's reliance on the same was neither unreasonable nor in bad faith. Further, counsel's continued reliance on such arguments has not "multiplied proceedings." Although Mom and Dad and Attorney Frank also refer to the continued litigation of the instant Motion for Sanctions after the state court's rulings as having multiplied the proceedings, the Court does not find that Daughter's counsel's persistence in obtaining a ruling on the pending Motion for Sanctions is either unreasonable or vexatious. Moreover, for the reasons previously stated, Daughter's counsel's interpretation of the theories presented by the Complaint and Amended Complaint are neither unreasonable nor made in bad faith. Counsel's continued reliance thereupon lacks the type of "egregious" misconduct § 1927 is intended to deter. *See LaSalle Nat'l Bank*, 287 F.3d at 289. The request for fees and costs under § 1927 is therefore denied.

To the extent that the request for fees is brought pursuant to Rule 11(c)(2) on behalf of the prevailing parties, the request is denied because the Court does not find that the Motion for Sanctions is completely frivolous or was filed with the intent to harass. *See Patterson v. Averbeke*, No. 10-996, 2013 U.S. Dist. LEXIS 179491, at *10 (E.D. Pa. Dec. 19, 2013) (refusing to award attorney's fees to the prevailing party of a sanctions motion because "this was not an 'exceptional circumstance' where the defendant's motion for attorney's fees had 'absolutely no chance of success'"). Rather, Daughter's counsel pursued the Motion for Sanctions based on her client's version of a contentious family dispute, which has factual and legal support in the record. *See Spencer v. Borough of Moosic*, No. 3:14-1704, 2016 U.S. Dist. LEXIS 18028, at *7 (M.D. Pa. Feb. 16, 2016) (refusing to order costs to the prevailing party of a sanctions motion because while counsel was "quite zealous in advocacy, . . . counsel's actions cannot be termed unreasonable"). This case does not present the type of exceptional circumstances justifying an expense award under Rule 11(c)(2).

14
080719

All requests for attorney's fees and/or costs against Daughter and/or Daughter's counsel for pursuing the Motion for Sanctions is denied.

## IV. CONCLUSION

The instant litigation arose from a contentious family dispute. There was evidence and argument supporting Mom and Dad's claims, which were ultimately presented to a jury for determination. Although unfortunate, the fact that Mom and Dad turned to the courts to resolve their argument with their Daughter was not an abuse or a misuse of the court's process. Because the claims were neither patently unmeritorious nor frivolous, this case does not present the type of exceptional circumstance wherein sanctions should be granted. For these reasons, and also because counsel's pre-filing inquiry was reasonable, the Motion for Sanctions is denied.

Pursuit of the Motion for Sanctions was also not unreasonable in light of the evidence and argument supporting Daughter's side of the hotly contested legal and factual issues. Exceptional circumstances are again absent to support an award of attorney's fees or costs. The request to impose fees and costs on Daughter and/or Daughter's counsel is denied.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge